IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUAN CARLOS LEON-HERRERA,

     Plaintiff,

v.                            Case No. 2:24-cv-00153-MIS-GJF

BAR-S FOODS CO d/b/a SIGMA FOODS
and JORGE ZUNIGA ISAIS d/b/a RVJ
TRANSPORT,

     Defendants.

## DEFENDANT CUSTOM PRO LOGISTICS, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

     Defendant, Custom Pro Logistics, LLC ("Defendant" or "Custom Pro"), by and through its counsel of record, Mayer LLP (Brian J. Fisher and J. Ashley Cummings) file this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and state the following:

     In the present lawsuit, Plaintiff, Juan Carlos Leon-Herrera ("Plaintiff") – a professional truck driver – seeks damages for claimed personal injuries sustained in a single-vehicle over-the-road incident in which he is believed to have fallen asleep behind the wheel. Plaintiff originally brought the present lawsuit on February 14, 2024, against (1) the alleged shipper of the load Plaintiff was carrying at the time of the underlying incident, Defendant, Bar-S Foods Co d/b/a Sigma Foods ("Sigma"), and (2) Plaintiff's employer and owner of the truck he was driving at the time of the underlying incident, Defendant, Jorge Zuniga Isais d/b/a RVJ Transport ("Zuniga/RVJ Transport"). Six months after filing suit and dismissing his claims with

prejudice against Sigma, Plaintiff amended his action to add (1) the newly-alleged shippers of the load Plaintiff was carrying at the time of the underlying incident, Defendants, Cal Fresco, LLC ("Cal Fresco"), and The Sygma Network, Inc. ("Sygma"), and (2) Custom Pro, a federally licensed freight broker that brokered the load to Zuniga/RVJ Transport for the transportation of the involved goods via interstate/intrastate commerce.

Plaintiff's lawsuit makes clear that Custom Pro is being sued for its operations as a federally licensed freight broker. Plaintiff judicially asserts in his First Amended Complaint (the "Complaint")[1] that Custom Pro is being sued for its freight brokering services, i.e., "Defendant Custom Pro brokered the trips with Cal Fresco and/or Sygma on behalf of Zuniga." [Doc. 30 at ¶ 4.9 (and generally)] As such, Plaintiff's claims in this civil action are indisputably directed at Custom Pro's freight brokerage services. As recognized by the three most recent Courts of Appeals decisions and the overwhelming majority of recent district courts (most recently, this Court), Plaintiff's claims against Custom Pro are expressly preempted by the plain language of the Federal Aviation Administration Authorization Act ("FAAAA"). Custom Pro respectfully submits that, as in these cases, its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted, and Plaintiff's claims against it should be dismissed, with prejudice, at Plaintiff's cost.

## I.    STATEMENT OF FACTS

1.    On or about January 7, 2024, Plaintiff was involved in an over-the-road

---

[1] Filed as ECF Doc. 30 on Aug. 20, 2024.

incident on eastbound Interstate 40 in Guadalupe County, New Mexico. [Doc. 30 at ¶ 3.6]

2.      At the time of the incident, Plaintiff was operating an eighteen-wheeler truck owned by and operated under the direction of Zuniga/RVJ Transport. [Doc. 30 at ¶ 3.4]

3.      Plaintiff had been hired by Zuniga/RVJ Transport as a long-haul driver. [Doc. 30 at ¶ 3.4]

4.      On the evening of the incident made the basis of this lawsuit, Plaintiff was delivering a Cal Fresco load brokered by Custom Pro to Zuniga/RVJ Transport, and assigned to Plaintiff by Zuniga/RVJ Transport. [Doc. 30 at ¶ 3.1]

5.      Cal Fresco loaded and dispatched the cargo contained in the load being carried by Plaintiff at the time of the underlying incident. [Doc. 30 at ¶ 3.5]

6.      The allegations against Custom Pro are made by Plaintiff in Custom Pro's capacity as a freight broker. [Doc. 30 at ¶¶ 3.1, 4.9 (and generally)] Custom Pro is a federally licensed freight broker and holds interstate freight broker authority from the Federal Motor Carrier Safety Administration ("FMCSA") under MC-523337.[2] Custom Pro does not hold any type of motor carrier authority from the FMCSA.[3]

---

[2] Attached as **Exhibit A** is a copy of Custom Pro's record from the United States Department of Transportation available from the FMCSA's SAFER System website. *Genesee Cnty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1122 (D.N.M. 2011) (holding that "when considering a motion to dismiss, 'the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.'" citing *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001)).
[3] *See* **Exhibit A**.

7.     In its capacity as a freight broker, Custom Pro merely arranges for transportation of deliveries via third party motor carriers, such as Zuniga/RVJ Transport. [Doc. 30 at ¶ 3.1] Custom Pro's only involvement with the shipment being transported at the time of the over-the-road incident made the basis of this lawsuit was brokering the shipment that Plaintiff was hauling at the time of the incident, in its capacity as a broker, to Zuniga/RVJ Transport. [Doc. 30 at ¶¶ 3.1, 4.9]

## II.    LEGAL STANDARD

A court should grant a motion to dismiss for failure to state a claim upon which relief can be granted if it appears that a plaintiff can prove no set of facts in support of a claim which would support an entitlement to relief. *Ash Creek Min. Co. v. Lujan*, 969 F.2d 868 (10th Cir. 1992). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court should construe any well-pleaded factual allegations in the complaint in favor of the plaintiff, but a court is not bound by the plaintiff's legal conclusions, bald assertions, or unsupportable conclusions. *Bryan v. Stillwater Bd. of Realtors*, 578 F.2d. 1319 (10th Cir. 1977); *Oppenheim v. Sterling*, 368 F.2d. 516 (10th Cir. 1966). A court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

A court should grant a motion to dismiss if "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1064 (10th Cir.

2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007); *Robbins v. Okla ex rel. Dep't of Human Services*, 519 F.3d 1242, 1247 (10th Cir. 2008) (holding that "[t]he allegations must be enough that if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief"). The "plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

## III.   LEGAL ARGUMENT

### A.   A summary of the FAAAA and recent jurisprudence.

Congress enacted the FAAAA in 1994 as part of a greater push to deregulate the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013);

*Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 457 (7th Cir. 2023). "Upon finding that state governance of intrastate transportation of property had become 'unreasonably burden[some]' to 'free trade, interstate commerce, and American consumers,'" Congress included several provisions in the FAAAA "**expressly preempting**" state trucking regulation. *Pelkey*, 569 U.S. at 256 (emphasis added) (quoting *Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002)); *see also Ye*, 74 F.4th at 457 (because the FAAAA "states explicitly what states may and may not do with respect to motor carriers and brokers," the issue before the court was one of "express preemption.") (internal citations omitted).

Particularly relevant in the scenario presented in the current litigation, the FAAAA specifically provides that a state:

> **[M]ay not enact or enforce a law or enforce a law, regulation, or other provision having the force and effect of law related to a** price, route, or **service of any** motor carrier . . . or any motor private carrier, **broker**, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added). Several exceptions then follow. *See id.* at § 14501(c)(2), (3), (5). Thus, with the recent emergence of plaintiffs filing state law negligence claims against freight brokers like Custom Pro, courts have been tasked with determining whether such claims: (1) fall within the FAAAA's express prohibition in § 14501(c)(1), and if so, (2) whether any of the FAAAA's exceptions apply to save the claim from preemption. *See Ye*, 74 F.4th at 457.

The district courts considering these cases across the United States were initially divided into three general schools of thought. The first group of district courts

found no FAAAA preemption of personal injury claims against brokers because negligent hiring claims were not sufficiently "related to" the broker's services as required by 49 U.S.C. § 14501(c)(1). *See, e.g., Scott v. Milosevic*, 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019); *Mann v. C.H. Robinson Worldwide, Inc.*, No. 16-00102, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017). The second group of district courts found negligent hiring claims preempted under § 14501(c)(1), but then held that the safety regulatory exception in § 14501(c)(2)(A) applied, thereby saving the claims from preemption. *See, e.g., Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 512 (N.D. Tex. 2020); *Uhrhan v. B&B Cargo, Inc.*, No. 17-2720, 2020 WL 4501104 (E.D. Mo. Aug. 5, 2020). The third group of district courts found that negligence claims against freight brokers were preempted under § 14501(c)(1) and that the safety exception did not apply. *See, e.g., Gillum v. High Standard, LLC*, No. 19-1378, 2020 WL 444371 (W.D. Tex. Jan. 27, 2020); *Loyd v. Salazar*, 416 F. Supp. 3d 1290 (W.D. Okla. 2019); *Volkova v. C.H. Robinson Co.*, 16-1883, 2018 WL 741441 (N.D. Ill. Feb. 7, 2018); *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808 (N.D. Ohio 2018).

Since these decisions, four different Courts of Appeals have directly addressed the issue. First, in *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020), a divided panel of the Ninth Circuit held that while personal injury claims against brokers for negligent hiring were sufficiently related to the services of freight brokers to be preempted under § 14501(c)(1) (the entire panel agreed with this holding), the claims nonetheless fell within the safety exception (this holding was split, 2-1). Following the Ninth Circuit's decision in *Miller*, the district courts

remained split, with some decisions adhering to its analysis and others distinguishing it, the latter line of cases finding the majority reasoning in *Miller* flawed, and maintaining instead that the safety exception did not apply. *Compare Bertram v. Progressive Southeastern Ins. Co.*, No. 19-1478, 2021 WL 2955740 (W.D. La. July 14, 2021); *Mendoza v. BSB Transport, Inc.*, No. 20-270, 2020 WL 6270743 (E.D. Mo. Oct. 26, 2020); *Lagrange v. Boone*, 2021-560 (La. App. 3d Cir. 4/6/22), 2022 WL 1021598 (all following *Miller* and finding claims "related to" broker services for purposes of preemption but safety exception applied) *with Gauthier v. Hard to Stop LLC*, No. 20-93, 2022 WL 344557 (S.D. Ga. Feb. 4, 2022); *Lee v. Werner Enterprises, LLC*, No. 22-91, 2022 WL 16695207 (N.D. Ohio Nov. 3, 2022); *Flanagan v. BNSF Railway Co.*, No. 21-14, 2021 WL 96679999 (S.D. Iowa Nov. 19, 2021) (all finding *Miller*'s interpretation of the safety exception incorrect and declining to find the exception applicable).

Then, in 2023 – and again in July of this year – the Eleventh Circuit and the Seventh Circuit weighed in, both agreeing with *Miller* that negligence claims were "related to" broker services for purposes of § 14501(c)(1), but disagreeing with *Miller*'s application of the safety exception and thus, affirming the dismissal of the plaintiffs' negligent hiring claims against freight brokers as preempted by the FAAAA. *See Gauthier v. Hard to Stop LLC*, No. 22-10774, 2024 WL 3338944 (11th Cir. July 9, 2024); *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453 (7th Cir. 2023);[4] *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023). Since these

---

[4] The Supreme Court denied cert in *Ye* on January 8, 2024. *See* 144 S. Ct. 564 (2024).

decisions, the overwhelming majority of district courts have found this analysis to be the most persuasive and have followed suit in dismissing state law negligence claims against brokers as preempted by the FAAAA. *See, e.g.*, *Bradley v. Big's Trucking*, No. 23-cv-122, 2024 WL 4045467, at *8 (N.D. Ala. Sep. 4, 2024);[5] *Schriner v. Gerard*, No. CIV-23-206-D, 2024 U.S. Dist. LEXIS 145154, at *7 (W.D. Okla. Aug. 14, 2024);[6] *Bailey v. Progressive County Mutual Insurance Company, et al.,* No. 22-5161 (E.D. La. Aug. 16, 2024);[7] *Farfan, et al. v. Old Dominion Freight Line, Inc.,* No. 23-cv-3470 (S.D. Tex. Aug. 12, 2024);[8] *Cox v. Total Quality Logistics, Inc.*, No. 22-26, 2024 WL 2962783 (S.D. Ohio June 12, 2024); *Morales v. OK Trans, Inc.*, No. 19-94 (S.D. Tex. May 29, 2024);[9] *Hamby v. Wilson*, No. 23-249, 2024 WL 2303850 (E.D. Tex. May 21, 2024); *Mays v. Uber Freight, LLC*, No. 23-73, 2024 WL 332917 (W.D. N.C. Jan. 29, 2024); *Montgomery v. Caribe Transport II, LLC*, No. 19-1300, 2024 WL 129181 (S.D. Ill. Jan. 11, 2024); *Tischauser v. Donnelly Transp., Inc.*, No. 20-1291, 2023 WL 8436321 (E.D. Wis. Dec. 5, 2023); *Lee v. Golf Transp., Inc.*, No. 21-1948, 2023 WL 7329523 (M.D. Pa. Nov. 7, 2023). Most recently, Judge Browning of this Court dismissed state law negligence claims against a freight broker based on FAAAA preemption. *See*, *Alboreo v. Dubai Express Haul, LLC*, No. 1:23-cv-00964-JB-KK, Doc. 131 (D.N.M. Sept. 27, 2024).[10]

Currently, the Courts of Appeals appear to be in agreement that personal

---

[5] The *Bradley* decision is attached hereto as **Exhibit B**.
[6] The *Schriner* decision is attached hereto as **Exhibit C**.
[7] The *Bailey* decision is attached hereto as **Exhibit D**.
[8] The *Farfan* decision is attached hereto as **Exhibit E**.
[9] The *Morales* decision is attached hereto as **Exhibit F**.
[10] The *Alboreo* decision is attached hereto as **Exhibit G**.

injury causes of action asserted against brokers for state law negligence claims fall within § 14501(c)(1)'s express prohibition on the enforcement of state laws "related to a . . . service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The only disputed issue, then, is whether the safety exception applies to these claims, and as the recent majority of recent decisions have held, the plain language of the FAAAA establishes that the exception is inapplicable. Against this legal backdrop, each inquiry is analyzed in further detail below.

### 1.    Does a negligent hiring claim relate to a service of a broker for purposes of preemption under § 14501(c)(1)?

Yes. The starting point for this analysis is the text of the FAAAA, "which necessarily contains the best evidence of Congress' pre-emptive intent." *Ye*, 74 F.4th at 458 (quoting *Pelkey*, 569 U.S. at 260). "Considering the phrase 'related to,' the Supreme Court has stressed that '[t]he ordinary meaning of these words is a broad one . . . and the words thus express a broad pre-emptive purpose.'" *Aspen*, 65 F.4th at 1266 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)); *see also Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (following *Morales* in interpreting the FAAAA). Thus, to be "related to" broker services, the state law in question "need only have a 'connection with, or reference to' these services." *Ye*, 74 F.4th at 458 (quoting *Rowe*, 552 U.S. at 370).

As the Courts of Appeals have uniformly found, this connection is easily met in this context. The FAAAA defines a "broker" as one who "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for

compensation." 49 U.S.C. § 13102(2). Because the "service" of a "broker" under the FAAAA includes arranging for the transportation of property by a motor carrier, "[a] 'core' part of this transportation-preparation service is, of course, selecting the motor carrier who will do the transporting." *Aspen*, 65 F.4th at 1267. *See also Gauthier*, 2024 WL 3338944 at 2 ("By regulating that specific activity, Gauthier's common law claim is aimed solely at "the performance of [brokers'] core transportation-related services.") (internal citations omitted). Thus, claims that a broker negligently selected a motor carrier indisputably have a "connection with, or reference to" the service of a broker for purposes of preemption under 49 U.S.C. § 14501(c)(1). *Id.* at 1267-68; *see also Ye*, 74 F.4th at 459 ("By its terms, Ye's claim strikes at the core of GlobalTranz's broker services by challenging the adequacy of care the company took—or failed to take—in hiring Global Sunrise to provide shipping services.");[11] *Miller*, 976 F.3d at 1024 ("[A] claim that imposes an obligation on brokers at the point at which they arrange for transportation by motor carrier has a 'connection with' broker services.").

### 2. Does the safety regulatory exception in § 14501(c)(2)(A) apply?

No. The safety exception provides, in pertinent part, that the express preemption provision in § 14501(c)(1) "shall not restrict the safety regulatory authority of a State **with respect to motor vehicles**." 49 U.S.C. § 14501(c)(2)(A)

---

[11] The *Ye* court also concluded that enforcement of a negligent hiring claim, and its attendant imposition of liability, would have a significant economic effect on broker services. *Ye*, 74 F.4th at 459. To avoid costly damages payouts, brokers would change how they conduct their services, changing their hiring processes and incurring new costs to evaluate motor carriers to avoid breaching a new duty of care under a state law negligence claim. *Id.* The direct relationship between a negligent hiring claim and the significant economic effects on a broker's services further established express preemption under § 14501(c)(1). *Id.*

(emphasis added). As the Eleventh and Seventh Circuits correctly concluded, the phrase "with respect to motor vehicles" requires a direct link between a state's law and motor vehicle safety, and no such link exists between negligent hiring claims against brokers and motor vehicle safety. *Aspen*, 65 F.4th at 1271-72 (claim against a broker was "necessarily one step removed from a 'motor vehicle' because the [FAAAA] 'definitions make clear that . . . a broker . . . and the services it provides have no direct connection to motor vehicles.'") (quoting dissent in *Miller*, 976 F.3d at 1031); *Ye*, 74 F.4th at 460-61 (finding at most, an indirect link between brokers and motor vehicle safety, where the broker does not own or operate motor vehicles, but rather allegedly negligently hired a motor carrier who negligently entrusted a motor vehicle to a negligent driver, who turn, caused the accident at issue).

As before, these courts first considered the statutory text of the exception. In accordance with Supreme Court jurisprudence, by using the phrase "with respect to motor vehicles," Congress "massively limit[ed] the scope" of the safety exception to "those laws concerning a 'vehicle, machine, tractor, trailer, or semitrailer … used on a highway in transportation.'" *Ye*, 74 F.4th at 460 (quoting *Pelkey*, 569 U.S. at 261; 49 U.S.C. § 13102(16) (defining "motor vehicle")); *Aspen*, 65 F.4th at 1271 (quoting *Pelkey*, 569 U.S. at 261). The lack of any mention of brokers or broker services in the safety exception itself or in Congress's definition of motor vehicles "suggest[s] that such claims may be outside the scope of the exception's plain text." *Ye*, 74 F.4th at 460.

The *Ye* court additionally found Congress's inclusion of brokers in the express

preemption provision of § 14501(c)(1), but exclusion in the following safety exception intentional. *Ye*, 74 F.4th at 461. "Congress could have chosen to save state safety laws enforced 'with respect to motor carriers and brokers,' but it did not." *Id.* "We hesitate to read broker services into parts of the statute where Congress declined to expressly name them, especially when it contemplated them elsewhere within the same statutory scheme." *Id.* (citing *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019)) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the court.'") (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012)); *see also Cox v. Total Quality Logistics, Inc.*, No. 22-26, 2024 WL 2962783, at *7 (S.D. Ohio June 12, 2024) ("If Congress intended for brokers to be included in the safety exception it would have. Instead, Congress marked a line in the sand when it limited the safety exception's application to state safety regulations related to 'motor vehicles.' So does this Court.").

The *Ye* court also looked beyond § 14501 to other provisions of Title 49 to reinforce its conclusion. *Ye*, 74 F.4th at 462-63. Doing so showed that Congress's regulation of motor vehicle safety in Title 49 addressed motor vehicle ownership, operation, and maintenance—but not broker services. *Id.* Indeed, its regulation of **motor carriers** throughout Title 49 with respect to motor vehicle safety further illustrated the absence of any evidence that Congress sees a direct link between broker services and motor vehicles. *Id.*; *see also Aspen*, 65 F.4th at 1272 (explaining that "a 'broker,' by definition, may not provide motor vehicle transportation for compensation; only a 'motor carrier' may perform that task.") (citing 49 U.S.C. §

13102(2) (a "broker" is a "person . . . that . . . sell[s], provid[es], or arrang[es] for, transportation by motor carrier for compensation"); 49 U.S.C. § 13102(14) (a "motor carrier" is "a person providing motor vehicle transportation for compensation.")).

Further, the *Aspen* court relied on fundamental canons of statutory construction to find that the phrase "with respect to motor vehicles" could have operative effect only if it required a direct connection between the state law and motor vehicles. *Aspen*, 65 F.4th at 1271. The court reasoned that the exception only comes into play if a state law is first preempted under § 14501(c)(1) because it "relate[s] to" a "service of any motor carrier, broker, or freight forwarder with respect to the transportation of property." *Id.* (citing 49 U.S.C. § 14501(c)(1)). Because motor vehicles are how motor carriers move property from one place to another, if an indirect connection was all that was required, the phrase "with respect to motor vehicles" would have no meaningful operative effect, violating the "basic premise of statutory construction . . . that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplusage." *Id.* (quoting *United States v. Canals-Jimenez*, 943 F.2d 1284, 1287 (11th Cir. 1991)); *see also Gauthier*, 2022 WL 344557, at *10 (quoting *Loyd*, 416 F. Supp. 3d at 1299) ("Moreover, were the Court to hold that a negligence claim asserted against a broker for personal injuries stemming from an accident involving their chosen motor carrier was 'with respect to motor vehicles,' the public safety exception would "swallow [section 14501(c)(1)'s broad] rule of preemption related to brokers' services.").

Finally, the *Ye* court and its progeny succinctly explained the flawed reasoning

of the *Miller* majority in finding that the safety exception applied to broker services. *See, e.g.*, *Ye*, 74 F.4th at 465; *Cox*, 2024 WL 2962783, at *7. Critically, *Miller* relied on a presumption **against** preemption, which the Supreme Court – and the Ninth Circuit itself – has recognized does not apply when a statute contains an express preemption clause. *Id.* (citing *Puerto Rico v. Frankin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016); *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 533 n. 6 (9th Cir. 2022) (explaining that *Miller* directly conflicts with the Supreme Court's instruction in *Franklin*)). Instead, courts are required to "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's preemptive intent" rather than "invoke any presumption against preemption." *Id.*; *see also Ye*, 74 F.4th at 465 ("We cannot be sure how the Ninth Circuit would interpret [the safety exception] absent such a presumption against preemption.").

In addition, and again contrary to Supreme Court precedent, the Ninth Circuit in *Miller* incorrectly interpreted the phrase "with respect to" in the safety exception as synonymous with "relating to." *Ye*, 74 F.4th at 465; *Cox*, 2024 WL 2962783, at *7 (both citing *Miller*, 976 F.3d at 1030). As the Supreme Court's decision in *Pelkey* instructs, "with respect to" more narrowly means "concerns," rather than the more inclusive "relate." *Ye*, 74 F.4th at 465; *Cox*, 2024 WL 2962783, at *8 (both citing *Pelkey*, 569 U.S. at 261). "Given Congress's choice in § 14501(c)(1) to use 'relating to,' its use of 'with respect to' in § 14501(c)(2)(A) implies a different scope. No doubt 'with respect to' is broad, but we decline to equate it to 'relating to.'" *Ye*, 74 F.4th at 465. "As a result, the phrase 'with respect to motor vehicles' in the safety exception

supports a narrower interpretation than the Ninth Circuit formulated in *Miller*. And

that interpretation does not include brokers." *Cox*, 2024 WL 2962783, at \*8.[12]

Finally and most recently, the Eleventh Circuit in *Gauthier* addressed this

argument head on and held:

> Gauthier also contends that cases arising from traffic
> accidents (like this one) should be treated differently than
> cases arising from property loss (like Aspen). But the
> nature of the injury is not what matters for purposes of the
> Act's preemption provision. Any claim that a broker
> negligently selected a driver to haul a load of property
> clearly falls within Section 14501(c)(1) because, as just
> noted, that claim seeks to regulate the broker's
> "performance of [its] core transportation-related services."
> *Id*. And such claims do not arise from an exercise of "the
> safety regulatory authority of a State with respect to motor
> vehicles," 49 U.S.C. § 14501(c)(2)(A), which requires that
> the relevant state law "have a direct relationship to motor
> vehicles," *Aspen*, 65 F.4th at 1271. We made that clear in
> *Aspen* by holding that negligent-selection-of-broker claims
> necessarily lack a direct relationship because "the services
> [a broker] provides have no direct connection to motor
> vehicles." *Id*. at 1272 (quoting Miller, 976 F.3d at 1031
> (Fernandez, J., concurring in part and dissenting in part)).
> Our holding in *Aspen* that a challenge to a broker's front-

---

[12] In *Morales*, attached hereto as **Exhibit F**, the Southern District of Texas aptly explained:

> The Fifth Circuit has previously declined to narrowly construe the motor-
> vehicle-safety exception. *See Cole v. City of Dallas*, 314 F.3d 730, 734 (5th Cir.
> 2002). There, the court decided that a city council ordinance regulating towing
> of vehicles fell within § 14501(c)(2)(A). *Id. Cole* is readily distinguishable from
> this case. There, the ordinance in question was directly related to motor vehicle
> safety – both by its text and stated purpose. *Id*. The Fifth Circuit specifically
> noted that "[i]t is difficult to imagine a regulation with a more *direct* protective
> nexus or peripheral economic burden." *Id*. at 735 (emphasis added). But here,
> for the reasons above, the relationship between Plaintiffs' claim [against a
> broker for negligent hiring of a motor carrier] and motor vehicle safety is much
> more attenuated. As such, Plaintiffs' claim falls comfortably outside the motor-
> vehicle-safety exception's reach – even declining to narrowly construe the
> statute, as the Fifth Circuit did in *Cole*.

*See* No. 19-94 (S.D. Tex. May 29, 2024) at 10, n.2.

> end selection of a motor carrier is preempted in no way
> turned on the back-end injury suffered as a result of the
> allegedly negligent selection.

*Id.* at 2.

As explained herein, the reasoning applied by the *Gauthier*, *Ye,* and *Aspen* line of cases is not only the majority view of recent authority, but it also contains the more faithful analysis of the plain text of the FAAAA, following the proper interpretative guidelines set forth by the Supreme Court. The analysis in these cases should therefore be considered persuasive, and Plaintiff's claims against Custom Pro should be dismissed, with prejudice, as preempted under the FAAAA.

**B.    Plaintiff's claims against Custom Pro should be dismissed based on federal preemption.**

As in the above cited cases, Plaintiff's claims against Custom Pro are related to the core of Custom Pro's services as a federally licensed freight broker in arranging for the transportation of property by a motor carrier and selecting the motor carrier to perform the transportation. Plaintiff's lawsuit generally alleges that Custom Pro brokered the involved load to Zuniga/RVJ Transport while being "fully aware of Zuniga's unsafe practices . . . ." [Doc. 30 at ¶ 4.9 (and generally)]. Plaintiff's claims thus clearly fall within § 14501(c)(1)'s express prohibition on the enforcement of state laws "related to a . . . service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

Moreover, the safety exception set forth in § 14501(c)(2)(A) does not apply. There is no allegation contained in the Complaint that Custom Pro owned or operated the motor vehicle at issue. To the contrary, Plaintiff judicially admits that the

involved truck he was operating as a professional driver was owned by Zuniga/RVJ Transport and operated by Plaintiff ". . . under the direction and/or supervision of Defendant Zuniga." [Doc. 30 at ¶ 3.4]. The only claimed connection between Custom Pro and a motor vehicle in this case is that Custom Pro allegedly hired a negligent motor carrier who, through its own negligent acts and/or omissions, caused the single vehicle incident at issue in which Plaintiff was acting as a professional driver. [Doc. 30 at ¶¶ 4.1-.6, 4.9] And as the plain language of the statute and the overwhelming of weight of recent authority indicates, this connection is too indirect and attenuated for the safety exception to apply.

Notably, dismissing Custom Pro from this case does not deprive Plaintiff of a remedy. It is well settled that the FAAAA does not preempt negligence claims against licensed motor carriers for negligent operation of a motor vehicle. *See* 49 U.S.C. § 13906(a)-(b) (requiring motor carriers to carry automobile liability insurance to respond to property damage and personal injury claims by third parties, but requiring licensed freight brokers only to maintain a bond to respond to a motor carrier's unpaid freight charges); *Gillum*, 2020 WL 444371, at \*6 (noting that "contrary to the Plaintiff's argument that a finding of preemption [against the broker] will leave Plaintiff without a remedy, Plaintiff may (and has) sought recourse against the two motor carriers," as well as their individual owners, and the driver, and further recognizing that the FAAAA requires that motor carriers carry liability insurance for injuries that may result from negligence); *Creagan*, 354 F. Supp. 3d at 814 (same). Similarly, here, Plaintiff has sued the motor carrier (who was also Plaintiff's

employer and the owner of the involved truck) and the owner(s) and/or shipper(s) of the involved load Plaintiff was transporting as a professional truck driver at the time of his single-vehicle over-the-road incident. But the lack of a remedy against Custom Pro "does not create a defense to federal preemption," and Plaintiff's claims against Custom Pro should be dismissed accordingly. *Krauss v. IRIS USA, Inc.*, No. 17-778, 2018 WL 2063839, at *7 (E.D. Pa. May 3, 2018) (citing *Weir v. Nw. Nat. Life Ins. Co.*, 796 F. Supp. 846, 849 (E.D. Pa. 1992)).

## IV.   CONCLUSION

In light of the recent emergence of state law tort claims seeking to hold freight brokers responsible for the conduct of a motor carrier, federal courts have been tasked with determining the scope of preemption under the FAAAA, including whether any of its exceptions apply. As noted in Judge Browning's recent order dismissing state law negligence claims asserted against the freight broker in the *Alboreo*, the most recent and overwhelming weight of authority has engaged in a thorough analysis of the plain text of the FAAAA, its context, and prior jurisprudence, and concluded that these claims should be dismissed as expressly preempted under the FAAAA.[13] The same result is warranted here. In the alternative, if necessary, Custom Pro maintains that Plaintiff has failed to state a claim with any of the causes of action asserted against Custom Pro in the Complaint, and is entitled to dismissal of the claims asserted against it. For these reasons, Custom Pro respectfully requests that this Court grant its motion to dismiss and dismiss the Plaintiff's claims asserted against

[13] *See* **Exhibit G**.

it, with prejudice, at Plaintiff's cost.

Respectfully submitted,

**MAYER LLP**

By:    */s/ Brian J. Fisher*
          Brian J. Fisher
          J. Ashley Cummings

4101 Indian School Rd NE, Suite 301N
Albuquerque, New Mexico 87110
Telephone:  505.483.1840
Facsimile:  505.483.1841
Email:        BFisher@mayerllp.com
                 ACummings@mayerllp.com

*Attorneys for Defendant Custom Pro
Logistics, LLC*

10779748v2 (12381.00002)

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 25, 2024, a true and correct copy of the foregoing was forwarded to the following counsel of record via CM/ECF and electronic mail pursuant to Federal Rule of Civil Procedure 5:

| | |
|---|---|
| Jorge L. Alvarez<br>Frank J. Pehlke<br>DeSouza Injury Lawyers<br>4047 Naco Perrin<br>San Antonio, Texas 78217 | _jorge@jfdlawfirm.com_<br>_frank@jfdlawfirm.com_ |
| Raúl P. Sedillo<br>Sky Willard<br>Jones, Skelton & Hochuli P.L.C.<br>8220 San Pedro Drive NE, Suite 420<br>Albuquerque, New Mexico 87113 | _rsedillo@jshfirm.com_<br>_swillard@jshfirm.com_ |
| Judd C. West<br>Julia Broggi<br>Holland & Hart LLP<br>110 N. Guadalupe, Suite 1<br>Santa Fe, New Mexico 87501 | _jcwest@hollandhart.com_<br>_jbroggi@hollandhart.com_ |

By:    _/s/ Brian J. Fisher_
        Brian J. Fisher