United States District Court
Southern District of Texas
**ENTERED**
August 12, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANGELICA FARFAN, INDIVIDUALLY §
AND ON BEHALF OF THE ESTATE OF §
ERIC PEREZ ESCOTO, DECEASED, §
AND AS WRONGFUL DEATH §
BENEFICIARY OF ERIC PEREZ §
ESCOTO, DECEASED AND AS NEXT §
FRIEND OF Z.P. AND A.P., MINORS §
AND MIGUEL ANGEL PEREZ AND §
JOSEFINA ESCOTO §
§
*Plaintiffs*, §
v. § CIVIL ACTION NO. 4:23-cv-3470
§
OLD DOMINION FREIGHT LINE, INC. §
§
*Defendant*. §

## ORDER

Pending before the Court is Defendant Old Dominion Freight Line, Inc.'s ("Defendant" or "Old Dominion") Motion to Dismiss. (Doc. No. 3). Plaintiffs Angelica Farfan, individually and on behalf of the estate of Eric Perez Escoto, deceased, and as wrongful death beneficiary of Eric Perez Escoto, deceased, and as next friend of X.P. and A.P., minors, ("Farfan") and Miguel Angel Perez and Josefina Escoto (collectively, "Plaintiffs") responded in opposition. (Doc. No. 9). Defendant replied. (Doc. No. 15). For the following reasons, the Court hereby GRANTS the motion to dismiss. (Doc. No. 3).

### I. Background

Plaintiffs filed this wrongful death lawsuit after the death of Eric Escoto, decedent. Plaintiffs allege that the decedent was travelling westbound on Spencer Road in Harris County, Texas, when a vehicle carrying a load for Old Dominion drove through a stop sign and collided



with the decedent's vehicle. Plaintiffs allege that the decedent suffered catastrophic injuries that ultimately resulted in his death.

Plaintiffs allege that Old Dominion is a "motor carrier (DOT Number 90849) and decided to hire this load out instead of carrying the load itself." (Doc. No. 1 at 7). Plaintiffs further allege that Old Dominion entered an agreement with Just Van to haul the load. Just Van was allegedly the employer of the Jesus Anduju—the driver who allegedly caused the accident that killed the decedent. Plaintiffs bring a claim for negligence and gross negligence against Old Dominion related to its hiring, entrusting, and monitoring of Just Van and Jesus Anduju. Old Dominion now moves to dismiss the lawsuit, arguing that federal statutes expressly preempt Plaintiffs' state law negligence claims against a licensed broker.

## II.     Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Similarly, a plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

Old Dominion moves to dismiss Plaintiffs' negligence-based lawsuit because federal law preempts state negligence claims against a licensed freight broker. In response, Plaintiffs argue that their negligence claim is not preempted because it is based on Old Dominion's hiring, entrustment, and failure to monitor. Thus, they argue that these negligence claims are not preempted because the substantive allegations have too attenuated an effect on the brokerage defendants' rates, routes, and services to implicate preemption. Alternatively, they argue that even if statutory preemption applies, the motor vehicle safety exception covers their claims. As such, under either theory, Plaintiffs urge the Court not to dismiss.

*A. Broker or Motor Carrier*

As an initial matter, the Court must determine whether Defendant is a broker. Plaintiffs' complaint alleges that Defendant is a "motor carrier." Notwithstanding this allegation, Defendant contends that it was acting as a broker as a matter of law.

Under the Interstate Commerce Commission Termination Act ("ICCTA"), a freight broker is:

> a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by

3

solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2). The Federal Motor Carrier Safety Administration ("FMCSA") has reiterated this definition by stating that a broker "arranges for the transportation of property by a motor carrier for compensation. A broker does not transport the property and does not assume responsibility for the property." *Ragar Transp. v. Lear Corp.*, No. 5:17-CV-52, 2021 WL 4502316, at *8 (S.D. Tex. Sept. 30, 2021).

According to Old Dominion, Plaintiffs allegations that Old Dominion was a motor carrier, as opposed to a broker, are insufficient and should not be taken as true. It argues that calling it a "motor carrier" is a "naked assertion" devoid of "further factual enhancement." (Doc. No. 3 at 4) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, Old Dominion contends that the Court should not take Plaintiffs' bare assertion that it is a "motor carrier" as true. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.")

In both their complaint and response brief, Plaintiffs maintain that Old Dominion simultaneously (1) contracted with the motor carrier, Just Van, and (2) acted as a motor carrier itself. Specifically, in their complaint, Plaintiffs note Old Dominion's Department of Transportation number, which designates it as a motor carrier. (Doc. No. 1-1 at 8). Old Dominion does not deny that it holds both a motor carrier license and a broker license. (Doc. No. 15 at 8). The mere fact that it holds a motor carrier license, however, does not mean that it was operating under its motor carrier license here.

Based on the conduct alleged against Old Dominion, it was acting as a broker rather than a motor carrier. Plaintiffs clearly allege Defendant identified and contracted with Just Van to haul the load. (Doc. No. 1-1 at § 4.02). This is exactly what a broker does. 49 U.S.C. § 13102(2)

4

(defining a broker as a person that offers for sale or holds itself out as "providing, or arranging for, transportation by motor carrier for compensation"); 49 C.F.R. 371.2(c) ("Brokerage or brokerage service is the arranging of transportation or the physical movement of a motor vehicle or of property."); *Georgia Nut Co. v. C.H. Robinson Co.*, 2017 WL 4864857, at *4 (N.D. Ill. Oct. 26, 2017) ("While the services of a freight broker do not include the actual transportation of property, they are focused on arranging how others will transport the property; these services, therefore, fall within the scope of the FAAAA preemption."). Moreover, the contract referenced by Plaintiffs in their complaint makes it clear that Defendant is a broker. *See* (Doc. No. 4-1, "Transportation Master Brokerage Agreement").

Since Defendant performed services that fall under the definition of broker, the Court will treat Defendant as a broker. *See Ragar Transp. v. Lear Corp.*, No. 5:17-CV-52, 2021 WL 4502316, at *8 (S.D. Tex. Sept. 30, 2021) (finding that although defendant was never labeled as a "broker," it was a broker because its services fell under the FAAAA's definition of broker in § 13102(2), therefore negligence claims were preempted and dismissed). Therefore, Plaintiffs' assertion that Defendant is a motor carrier is a mistake, or else a false legal conclusion that the Court cannot accept as true.

B. *Preemption*

Having found that Defendant is a broker, the Court must determine whether federal statute preempts Plaintiffs' claims related to the allegedly negligent hiring, entrusting, and failing to monitor Just Van, the motor carrier. The ICCTA's preemption provision, previously codified in the Federal Aviation Administration Authorization Act ("FAAA"), provides:

> a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

5

49 U.S.C. § 14501(c)(1)) and 49 U.S.C. § 14501(b)(1). Thus, to establish preemption, a party must show both that (1) a state enacted or attempted to enforce a law; and (2) the state law relates to broker rates, routes, or services, or has a significant economic effect on them. The FAAA also contains a safety exception to this general preemption provision. The safety exception provides that the express preemption provision "shall not restrict the **safety regulatory authority of a State with respect to motor vehicles.**" 49 U.S.C. § 14501(c)(2)(A) (emphasis added).

The issue is whether ICCTA/FAAA preempts negligent hiring claims like the ones asserted here. To determine this, the Court must answer two questions: (1) does the preemption provision apply, and (2) does the safety exception nevertheless prevent preemption. While the Fifth Circuit does not appear to have addressed this issue, there is varying support for both parties' positions here. In fact, a district court in this Circuit summarized the three distinct positions taken by courts on this issue:

> The **first group of courts found no FAAAA preemption of personal injury claims against brokers based on the conclusion that negligent hiring claims are not sufficiently "related to" the services of a broker.** *See, e.g., Scott v. Milosevic*, 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019); *Mann v. C.H. Robinson Worldwide, Inc.*, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017). The **second group of courts rejected FAAAA preemption of common law negligence claims based on the safety regulatory exception.** *See, e.g., Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020); *Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 512 (N.D. Tex. 2020); *Popal v. Reliable Cargo Delivery, Inc.*, 2021 WL 1100097 (W.D. Tex. Mar. 10, 2021); *Grant v. Lowe's Home Ctr.*, 2021 WL 288372, at *3 (D.S.C. Jan. 28, 2021). Finally, the **third group of courts have found that negligence claims against freight brokers are preempted under the FAAAA and do not fall within the safety exception.** *See, e.g., Gillum v. High Standard, LLC et al.*, 2020 WL 444371 (W.D. Tex. Jan. 27, 2020); *Loyd v. Salazar*, 2019 WL 4577108, at *4 (W.D. Okla. Sept. 20, 2019); *Creagan v. Wal-Mart Trans., LLC*, 354 F. Supp. 3d 808, 812 (N.D. Ohio 2018).

*Bertram v. Progressive Se. Ins. Co.*, No. 2:19- CV-01478, 2021 WL 2955740, at *2 (W.D. La. July 14, 2021). The *Bertram* court ultimately took the second approach, in that it agreed that the

plaintiffs' negligence claims were related to brokerage services (thus preemption applied) but found that the claims fell within the safety exception.

In total, three Circuits have addressed the issue of whether negligent hiring claims against brokers are preempted. On the first step of the analysis, they all found that the preemption provision applied. In other words, they found that negligent hiring claims against a broker are in fact preempted as such claims relate to "rates, routes, and services" of the broker that fall under § 14501(c)(1). On the second step, however, the Circuits are split on whether these kinds of common law claims fall within the safety exception. While the Ninth Circuit found that the negligent-hiring claims do fall within the safety exception (and thus the claims are not preempted), the Seventh and Eleventh Circuits found that these claims do *not* fall within the safety exception (and thus the claims are preempted). *Compare Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1021-25 (9th Cir. 2020) (holding that the safety exception applies in negligence cases stemming from motor vehicle accidents) *with Ye v. GlobalTranz Enterprises*, 74 F.4th 453 (7th Cir. 2023) (finding that "the connection here—between a broker hiring standard and motor vehicles—is too attenuated to be saved under § 14501(c)(2)(A)"); *Aspen American Insurance Company v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023) (holding that although Plaintiff's claims implicated an exercise of Florida's safety regulatory authority, that authority was not exercised "with respect to motor vehicles").

On the first prong, the Court here finds that Plaintiffs' negligent hiring claim is covered by the preemption provision because they sufficiently relate to "rates, routes, and services" of the broker that fall under § 14501(c)(1). Essentially, Plaintiffs claim that Old Dominion negligently arranged for Just Van to transport the shipment, causing the motor vehicle accident at issue. This claim has more than a tenuous relationship to broker services. Rather, the relationship is direct, and

7

consequently, Plaintiffs' negligence claim is preempted by § 14501(c)(1). This conclusion is in line with each of the three Circuits addressed above, as well as two recent Texas cases on the issue. *See Hamby v. Wilson*, No. 6:23-CV-249-JDK, 2024 WL 2303850 (E.D. Tex. May 21, 2024); *Morales v. Ok Trans, Inc.*, No. 2:19-CV-00094, 2024 WL 3223675 (S.D. Tex. May 29, 2024).

On the second prong, the Court finds that the motor-vehicle safety exception does not apply to or otherwise save Plaintiff's claims. The Court begins with the text. *See BedRoc Ltd. V. United States*, 541 U.S. 176, 183 (2004) ("[The] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (citations omitted)); *see also Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (noting that resolution of whether preemption applies begins and ends with the text). The text of the exception states:

> [Section 14501(c)(1)] shall not restrict the **safety regulatory authority of a State with respect to motor vehicles**, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization[.]

49 U.S.C. § 14501(c)(2)(A) (emphasis added).

As noted, courts interpreting the exception language in the context of a negligent brokering claim have reached different conclusions. Defendant relies primarily on *Aspen*, where the Eleventh Circuit decided that the motor-vehicle-exception does not apply to a negligent brokering claim, and *Ye*, where the Seventh Circuit concluded the same. By contrast, Plaintiffs urge the Court to follow *Miller*, where the Ninth Circuit decided that the exception does apply to a negligent brokering claim. Thus, Plaintiffs argue that in light of *Miller*, their claims are not preempted because they fall into the language of the safety exception.

Upon considering the briefing and examining the applicable law, the Court finds that the safety exception does not apply to negligent hiring claims against a broker. In reaching this

conclusion, the Court finds the analysis by the Seventh Circuit in *Ye* to be most persuasive. The *Ye* court adheres most closely to the statute's text. In *Ye*, the Seventh Circuit determined that the phrase "with respect to motor vehicles" "massively limits the scope" of the motor-vehicle-safety exception, requiring a "direct link between a state's law and motor vehicle safety." 74 F.4th at 460 (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261–62 (2013)). The court recognized that the phrase "with respect to motor vehicles" narrows "the scope of the exception to those laws concerning 'a vehicle, machine, tractor, trailer, or semitrailer... used on a highway in transportation.'" *Id.* (citing 49 U.S.C. § 13102(16) (defining "motor vehicle")). Indeed, the Supreme Court has interpreted "with respect to" to mean "direct relation to, or impact on." *See Presley v. Etowah Cnty. Comm'n*, 502 U.S. 491, 506 (1992); *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 720 (2018). Granted, in those cases, the Court interpreted the phrase in a different statute. Regardless, the ordinary meaning of "with respect to" suggests that a state law must have a direct link to motor vehicles to fall within the exception. *See* Aspen, 65 F.4th at 1271.

Here, there is no direct link between motor vehicle safety and Old Dominion's alleged negligence in brokering the load at issue to Just Van. As discussed above, Plaintiffs allege that Old Domino was negligent in selecting Just Van to transport the load—not that Old Dominion itself violated any law or regulation directly related to a motor vehicle, or even that Old Dominion is the owner or operator of any vehicle at issue. At most, Old Dominion's link to motor vehicle safety is several steps removed: Old Dominion brokered the load to Just Van, who in turn hired Anduju as the driver, who in turn drove negligently. Consequently, the Court finds that the relationship between Old Dominion's alleged negligence and any motor vehicle accident caused by Anduju is too attenuated to fall within the motor-vehicle-safety exception. *See Ye*, 74 F.4th at 461–62 (finding no direct relationship between negligent brokering claim and motor vehicle safety

9

where Defendant's negligent hiring of the motor carrier resulted in the motor carrier's negligent entrustment of a motor vehicle to a negligent driver who, in turn, caused a collision that resulted in the decedent's death.); *Gillum v. High Standard, LLC*, No. SA-19-CV-1378, 2020 WL 444371, at *5 (W.D. Tex. Jan. 27, 2020) (finding negligent hiring claim did not fall within the motor-vehicle-safety exception where the Defendant did not own or operate any vehicle subject to the state's regulatory authority); *Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1298-1300 (W.D. Okla. 2019) (same); *Volkova v. C.H. Robinson Co.*, No. 16-C-1883, 2018 WL 741441, at *4 (N.D. Ill. Feb. 7, 2018) (same).

As the *Ye* opinion noted, brokers and motor vehicles share only somewhat of a relationship "at a higher level of generality." 74 F.4th at 462. However, the text of § 14501(c)(2), which serves as the best evidence of Congress's intent, evinces that Congress intended to limit the motor-safety-exception to "state safety regulations directly related to 'motor vehicles.'" *Ye*, 74 F.4th at 762. Plaintiffs' negligent brokering claim lacks that direct relationship. Moreover, as *Ye* points out, brokers are *not* mentioned in § 14501(c)(2)(A), even though Congress expressly listed broker services in § 14501(c)(1)'s express preemption provision—suggesting the exclusion of brokers in § 14501(c)(2)(A) was intentional. *See id.* at 461. If Congress intended the motor-vehicle-safety exception to apply to brokers, it could have said so in § 14501(c)(2).[1] But Congress did not specifically apply the motor-vehicle-safety exception to brokers—even though it specifically "excepted state laws for motor vehicle safety, cargo loads, and motor carrier insurance." *Ye*, 74 F.4th at 461. As such, this Court declines to read brokers into the language of the § 14501(c)(2) exception.

---

[1] *See Barnhard v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) ("[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate ... exclusion." (internal quotations and citation omitted)).

The Court therefore **GRANTS** Old Dominion's motion to dismiss, finding that Plaintiffs' negligent hiring claims against it are preempted by federal statute. *See Hamby v. Wilson*, No. 6:23-CV-249-JDK, 2024 WL 2303850 (E.D. Tex. May 21, 2024) (adopting the reasoning from *Ye* and *Aspen* and concluding "that § 14501's express language preempts a negligent brokering claim and that the safety exception does not save the claim from preemption").

### IV.  Conclusion

For the reasons explained above, the Court **GRANTS** Defendant Old Dominion's motion to dismiss. (Doc. No. 3). The Court concludes that Plaintiffs' negligence and gross negligence brokering claims are preempted by 49 U.S.C. § 14501(c)(1) and are not excepted from preemption by the safety exception clause of § 14501(c)(2)(A). Accordingly, this matter is dismissed.

SIGNED at this 12th day of August, 2024.

Andrew S. Hanen
United States District Judge