# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MCKENNA ALBOREO, A SINGLE MAN; and
DENNIS P. MURPHY, ESQ., AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
STEPHANIE CHASER, DECEASED,

       Plaintiffs,

vs.                                          No. CIV 23-0964 JB/KK

DUBAI EXPRESS HAUL, LLC, A FOREIGN
CORPORATION; ABDIFATAH MAHAMED
ISMAIL AND JANE DOE MAHAMED
ISMAIL, HUSBAND AND WIFE; JOHN AND
JANE DOES 1-5; AND ABC
CORPORATIONS 1-5,

       Defendants.

STEVEN CHASAR,

       Plaintiff,

vs.

DUBAI EXPRESS HAUL, LLC, A FOREIGN
CORPORATION; ABDIFATAH MAHAMED
ISMAIL AND JANE DOE MAHAMED
ISMAIL, HUSBAND AND WIFE; XPO
LOGISTICS, LLC; BEDROCK LOGISTICS,
LLC; JACOBSON LOGISTICS COMPANY;
JACSON TRANSPORTATION COMPANY
INC.; TRIDENT LEASING, INC.;
ABDIHAMID ABDULE, an individual; JOHN
AND JANE DOES 2-5; AND ABC
CORPORATIONS 6-10,

       Defendants.



## ORDER[1]

**THIS MATTER** comes before the Court on: (i) Defendant Bedrock Logistics, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6), filed November 9, 2023 (Doc. 14)("MTD"); (ii) Plaintiff Steven Chasar's Motion to Remand, filed December 1, 2023 (Doc. 28)("Motion to Remand"); and (iii) Defendant Bedrock Logistics, LLC's Motion to Strike Plaintiff's Evidentiary Objections to Defendant Bedrock Logistics, LLC's Amended Notice of Removal, filed December 5, 2023 (Doc. 33)("Motion to Strike").  The Court held a hearing on January 31, 2024.  See Clerk's Minutes for January 31, 2024, Hearing, filed January 31, 2024 (Doc. 62).  The primary issues are: (i) whether federal law preempts Plaintiff Steven Chasar's claims against Bedrock Logistics, LLC, where Congress expressly preempts certain tort claims against brokers like Bedrock Logistics; (ii) whether Bedrock Logistics adequately alleges diversity of citizenship and removed this action properly, where Bedrock Logistics and several co-Defendants are LLCs and, after multiple attempts at service, Chasar sent a copy of the summons and complaint to one named co-Defendant, Abdihamid Abdule, via certified mail; and (iii) whether the Plaintiff Steven Chasar's Objections to Defendant Bedrock Logistics, LLC's Amended Notice of Removal, filed November 20, 2023 (Doc. 25)("Objections"), is a document that the Court may and should strike from the record pursuant to rule 12(f) of the Federal Rules of Civil Procedure. The Court concludes: (i) federal law preempts Chasar's claims because the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c)(1), expressly preempts Chasar's tort

---

[1]This Order disposes of: (i) Defendant Bedrock Logistics, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6), filed November 9, 2023 (Doc. 14); (ii) Plaintiff Steven Chasar's Motion to Remand, filed December 1, 2023 (Doc. 28); and (iii) Defendant Bedrock Logistics, LLC's Motion to Strike Plaintiff's Evidentiary Objections to Defendant Bedrock Logistics, LLC's Amended Notice of Removal, filed December 5, 2023 (Doc. 33).  The Court will issue at a later date, however, a Memorandum Opinion more fully detailing its rationale for this decision.

claims against brokers like Bedrock Logistics; (ii) Bedrock Logistics adequately alleges diversity of citizenship and removed this action properly, given that all members and principals of each LLC Defendant are citizens of states outside of New Mexico and Chasar failed to serve Abdule properly; and (iii) the Court will not strike the Objections, because they do not violate any federal or local rules.

## I.  THE COURT GRANTS BEDROCK LOGISTICS' MTD, BECAUSE FEDERAL LAW PREEMPTS CHASAR'S CLAIMS.

Regarding the MTD, the primary issue is whether federal law preempts Chasar's claims against Bedrock Logistics.  For the reasons stated on the record at the January 31, 2024 hearing, see Transcript of Hearing at 51:4-53:2, taken January 31, 2024 (Court)("January 31 Tr."), the Court grants the MTD.  At the January 31, 2024, hearing, the Court noted that ongoing discovery may indicate that Bedrock Logistics operated as a carrier, rather than a broker, in relation to Chasar's claims, which would impact the Court's preemption analysis.  See January 31 Tr. at 52:17-53:2 (Court).  Chasar later submitted several produced documents to support its contention that that Bedrock Logistics acted as a carrier, and the parties submitted supplemental briefing on this issue. See Plaintiff Steven Chasar's Supplemental Briefing in Support of His Opposition to Defendant Bedrock Logistics, LLC's Motion to Dismiss, filed April 3, 2024 (Doc. 79)("MTD Supplemental Briefing Motion"); Response in Opposition to Plaintiff Steven Chasar's Supplemental Briefing of His Opposition to Defendant Bedrock Logistics, LLC's Motion to Dismiss, filed April 24, 2024 (Doc. 91)("MTD Supplemental Briefing Response"); Plaintiff Steven Chasar's Reply to Supplemental Briefing, filed May 1, 2024 (Doc. 93)("Supplemental Briefing Reply").  "A court must convert a motion to dismiss into a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court,' and 'all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'"  Am. Mech. Sols.,

L.L.C. v. Northland Process Piping, Inc., 184 F. Supp. 3d 1030, 1051-52 (D.N.M. 2016)(Browning, J.)(quoting Fed. R. Civ. P. 12(d)).  Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment. See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279, n. 1 (10th Cir. 2004)(citing 27A Federal Procedure, Lawyers' Ed. § 62:520 (2003)[2]).  Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).  A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim, and the parties do not dispute the documents' authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941–42 (10th Cir. 2002).  If the complaint does not incorporate, reference or attach a document, but the complaint refers to the document and the document is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  Because the MTD has not been converted into a motion for summary judgment and none of the produced documents fit into the above categories, the Court will not consider the produced documents that Chasar submits in his supplemental briefing for the purposes of evaluating the MTD.

Considering only the facts that are properly before the Court, the Court concludes that the FAC does not allege sufficiently that Bedrock Logistics acted as a carrier.[3]  Chasar's allegation that

---

[2]The Court notes that, in the latest edition, this proposition appears in § 62:471.  The updated citation is: 27A Federal Procedure, Lawyers' Ed. § 62:471 at 387-88 (2017).

[3]While it is improper for the Court to consider Chasar's produced documents for the purposes of evaluating the Motion to Dismiss, the Court notes that, having reviewed the

supplemental briefing materials, Chasar does not identify a genuine factual dispute regarding Bedrock Logistics' carrier status. Chasar asserts that the produced documents "show[] that Bedrock acted as a carrier and not just as a broker," MTD Supplemental Briefing Motion at 2, because the produced documents occasionally identify Bedrock Logistics as a "carrier" and impose various levels of liability on Bedrock Logistics. The Court disagrees with Chasar's characterization of the documents.

> [N]umerous courts have found that "the key distinction" between a carrier and a broker "is whether the disputed party accepted legal responsibility to transport the shipment," in which case the party is a carrier. [Essex Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1301 (11th Cir. 2018)](emphasis in original) (collecting cases); see also Tryg Ins. v. C.H. Robinson Worldwide, Inc., 767 F. App'x 284, 286-87 (3d Cir. 2019)("[I]n determining whether a party is a carrier or a broker, the crucial question is whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the goods."). "This is necessarily a case-specific analysis." Essex Ins. Co., 885 F.3d at 1302. Although a broker "can insulate itself from strict liability with respect to a particular shipment if it makes clear in writing that it is merely acting as a go-between to connect the shipper with a suitable third-party carrier[,] . . . [w]here no such writing exists, the question will depend on how the party held itself out to the world, the nature of the party's communications and prior dealings with the shipper, and the parties' understanding as to who would assume responsibility for the delivery of the shipment in question." Id.

Swenson v. All. Moving & Storage LLC, No. 21-CV-01968-CMA-STV, 2022 WL 1508506, at *7 (D. Colo. Apr. 26, 2022)(Varholak, M.J.), report and recommendation adopted, No. 21-CV-01968-CMA-STV, 2022 WL 1500778 (D. Colo. May 12, 2022)(Arguello, J.). Within this district, The Honorable Judith C. Herrera, Senior United States District Judge for the District of New Mexico, reasons similarly:

> According to 49 C.F.R. § 371.2, a broker is "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier." 49 C.F.R. § 371.2. Motor carriers are not considered brokers "when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." Id. Consequently, a broker is distinct from a motor carrier -- the "main difference between a motor carrier and a broker is the actual operation of the leased equipment . . . . Put briefly, a motor carrier transports, and a broker provides a motor carrier." Puga v. RCS Sols., Inc., 922 F.3d 285, 292 (5th Cir. 2019). Whether an entity is acting as a carrier in a specific transaction is "determined not by reference to its authority but rather by reference to what it holds itself out to be." Ensco, Inc. v. Weicker Transfer and Storage Co., 689 F.2d 921, 925 (10th Cir. 1982) . . . .

> Whether [the defendant] meets the statutory definition of a motor carrier is a legal conclusion not entitled to deference when there are insufficient factual

———————————————

allegations to plausibly support the legal conclusion . . . .  Under <u>Tryg</u> and <u>Essex</u>, to be a carrier, rather than a broker, on a certain transaction, the entity must not only have arranged for the transportation that it was authorized itself to transport but have accepted and legally bound itself to transport the goods.

<u>Dixon v. Stone Truck Line, Inc.</u>, No. 19-CIV-00945-JCH-GJF, 2020 WL 7079047, at *10-11 (D.N.M. Dec. 3, 2020)(Herrera, J.)(ellipses added).  None of the produced agreements that Chasar identifies suggests that Bedrock Logistics holds itself out to be a carrier or is authorized to transport goods for the transaction at issue.  The Master Broker Transportation Agreement, upon which Chasar puts considerable weight, defines Bedrock Logistics as a broker who must "enage [sic] the services of a Carrier."  Master Transportation Agreement ¶ 1.3 at 2, filed April 23, 2024 (Doc. 79-5)("Master Transportation Agreement").  Similarly, the Bedrock Broker-Carrier Agreement between Bedrock Logistics and Dubai Express indicates that Bedrock Logistics acts a broker by contracting Dubai Express to perform carrier services for Bedrock Logistics' clients.  Bedrock Broker-Carrier Agreement at 1, filed April 24, 2024 (Doc. 91-1)("Bedrock Broker-Carrier Agreement").

Chasar also contends that Bedrock Logistics is a carrier, because it assumes liability for lost or damaged goods and other obligations in its contract with RXO Solutions and indemnifies RXO Solutions.  <u>See</u> MTD Supplemental Briefing Reply at 10.  The Court disagrees with Chasar's contentions.  Although Bedrock Logistics, LLC, assumes "liability of a common carrier for full actual loss or damage to goods transported [] as if [Bedrock Logistics] were the transporting carrier," the Master Transportation Agreement states that Bedrock Logistics "may not directly handle freight."  Master Transportation Agreement ¶ 11.1 at 10.  Bedrock Logistics does not "legally [bind] itself to transport goods," <u>Tryg Ins. v. C.H. Robinson Worldwide, Inc.</u>, 767 F. App'x at 286-87, by assuming liability for lost or damaged goods.  In fact, the contract prohibits Bedrock Logistics from transporting the goods.  <u>See</u> Master Transportation Agreement ¶ 11.1 at 10.  Accordingly, Chasar does not identify a genuine factual dispute regarding Bedrock Logistics' carrier status, because the produced documents show that Bedrock Logistics did not "arrange for the transportation that it was authorized itself to transport [or] accept[] and legally [bind] itself to transport the goods." <u>Dixon v. Stone Truck Line, Inc.</u>, 2020 WL 7079047, at *11.  That RXO Solutions billed Bedrock Logistics as a "carrier" for the lost goods does not change this analysis.  <u>See</u> Claim Presentation Form L 314349-20 at 1 (dated August 4, 2022), filed April 3, 2024 (Doc. 79-4).

The same logic holds for Chasar's other contentions.  Bedrock Logistics is not a carrier solely because it assumes liability for "all obligations. . . [as] if it performed the transportation and related services itself," Master Transportation Agreement ¶ 1.5 at 3, and indemnifies RXO Solutions, <u>see</u> Master Transportation Agreement ¶ 10.1 at 9.  Regardless of those financial obligations, Chasar has not identified a genuine factual dispute regarding whether Bedrock Logistics held itself out as a carrier or was authorized to transport goods under the produced agreements.  Thus, even considering the full record that both parties have submitted, the Court concludes that Chasar has not identified a genuine factual dispute regarding Bedrock Logistics' carrier status.

Bedrock Logistics was "acting as shipper/broker/carrier," First Amended Complaint ¶ 43 at 10, filed November 1, 2023 (Doc. 1-2)("FAC"), is insufficient, because Chasar's pleading obligation "requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, (2007). See Papasan v. Allain, 478 U.S. 265, 286, (1986)("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); Hall v. Belman, 935 F.2d 1106, 1110 (10th Cir. 1991)("[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations."). Without more, the Court need not accept Chasar's legal conclusion that Bedrock Logistics is a "shipper/broker/carrier," particularly when Chasar undermines that broad conclusion in the next paragraph by alleging that Bedrock is liable only insofar as they "acted negligently and carelessly in brokering the transportation of the cargo." FAC ¶ 44 at 11. See Dixon v. Stone Truck Line, Inc., No. 19-CIV-00945-JCH-GJF, 2020 WL 7079047, at *11 (D.N.M. Dec. 3, 2020)(Herrera, J.)("Whether [the defendant] meets the statutory definition of a motor carrier is a legal conclusion not entitled to deference when there are insufficient factual allegations to plausibly support the legal conclusion."). Accordingly, the supplemental briefing does not alter the Court's analysis as stated on the record at the January 31 hearing, see January 31 Tr. at 51:4-53:2 (Court), and the Court grants the MTD.

## II. THE COURT DENIES CHASAR'S MOTION TO REMAND, BECAUSE BEDROCK LOGISTICS ADEQUATELY ALLEGES DIVERSITY OF CITIZENSHIP AND REMOVED THIS ACTION PROPERLY.

Regarding the Motion to Remand, the primary issues are (i) whether Bedrock Logistics has established adequately diversity of citizenship, where Bedrock Logistics and several co-Defendants are LLCs; and (ii) whether all the served Defendants timely joined in removal of the action, where, after multiple attempts at service, Chasar sent a copy of the summons and complaint to one named

co-Defendant, Abdihamid Abdule, via certified mail.  On November 1, 2023, Bedrock Logistics

removed a consolidated State court case, alleging that "[c]omplete diversity of citizenship exists

between Plaintiffs and Defendants," that the amount in controversy exceeds $75,000, and that the

Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.  Notice of Removal to

the United States District Court for the District of New Mexico ¶¶ 3, 23, 28-29 at 2, 5-6, filed November

1, 2023  (Doc. 1)("Notice of Removal").   Noting that Bedrock Logistics "has not alleged the

citizenship of all the members of the parties that appear to be limited liability companies," the

Honorable Kirtan Khalsa, United States Magistrate Judge for the District of New Mexico, ordered

Bedrock Logistics to "either (1) file a written response . . . in which it shall show cause why the

Court should not remand this matter for lack of subject-matter jurisdiction or (2) file an amended

notice of removal that alleges facts sufficient to sustain subject-matter jurisdiction."  Order to Show

Cause or Cure at 3, filed November 3, 2023 (Doc. 5).  In response, Bedrock Logistics filed an

Amended Notice of Removal, alleging that all members of the named LLC Defendants at issue -

- Bedrock Logistics, Defendant Dubai Express Haul, LLC, and Defendant RXO Capacity Solutions,

LLC -- reside in States outside of New Mexico.  See Amended Notice of Removal ¶¶ 10-12 at 2-3,

filed November 17, 2023 (Doc. 21)("Amended Notice of Removal").  The Motion to Remand

asserts removal is improper, because (i) Bedrock Logistics has not shown complete diversity and

(ii) not all served Defendants timely joined.  See Motion to Remand at 3, 5.  At the January 31,

2024, hearing, the Court requested that Bedrock Logistics, Dubai Express, and RXO Solutions send

letters to the Court "indicating all the principals and members of that LLC and their citizenship,"

and not just their residences.  January 31 Tr. at 53:7-8 (Court).  See January 31 Tr. at 53:5-20; id.

at 68:12-18 (Court).

Bedrock Logistics represents to the Court, via an email with attachments, that: (i) the

Schlegel-Bedrock Family Trust and Four-K Investments, LP  fully owns Bedrock Logistics; (ii) at the time of filing, the Schlegal-Bedrock Family Trust's beneficiaries and trustee were each Texas residents and intended to continue to reside in Texas; and (iii) at the time of filing, Four-K Investments, LP's partners were each Texas residents and intended to continue to reside in Texas. See Email to Court with attachments at 8 (dated February 14, 2024), filed March 3, 2024 (Doc. 73). Dubai Express represents to the Court, via an email with attachments, that Dubai Express "is fully and solely owned by Advikima Abrahim," who "resides and intends to continue to reside in Nebraska."  Email to Court with attachments at 2 (dated March 7, 2024), filed March 7, 2024 (Doc. 74).  RXO Solutions sent a letter to the Court, enclosing two previously filed corporate disclosure statements -- Rule 7.1 Corporate Disclosure Statement of RXO Capacity Solutions, LLC, filed November 9, 2023 (Doc. 10), and Rule 7.1 Corporate Disclosure Statement of Jacobson Logistics Company, LC, filed November 9, 2023 (Doc. 11) -- which they assert "inform[s] the Court of the members of . . . [RXO Solutions] and citizenships of such members."  Letter from Mark D. Blosser to Court at 1 (dated February 6, 2024), filed February 12, 2024 (Doc. 65).

The Court held another hearing on March 27, 2024.  See Clerk's Minutes for March 27, 2024, Hearing, filed January 31, 2024 (Doc. 77).  At the hearing, the Court requested additional information regarding citizenships of Bedrock Logistics', Dubai Express', and RXO Solutions' members and principals.  To confirm the citizenships of Bedrock Logistics' members and principals, the Court requested an additional letter identifying the citizenships of the Schlegel-Bedrock Family Trust's beneficiaries and trustee, as well as the citizenships of Four-K Investments' partners.  See Transcript of Hearing at 7:17-8:14, taken March 27, 2024 (Court, Sedillo)("March 27 Tr.").[4]  To confirm the citizenships of Dubai Express' members and principals, the Court

---

[4]The Court's citations to the transcript of the March 27, 2024, hearing refer to the court

requested an additional letter identifying the citizenships of Dubai Express' members and principals. See March 27 Tr. at 6:21-7:10 (Stiff, Court). To confirm the citizenships of RXO Solutions' members and principals, the Court requested an additional letter identifying RXO, Inc. as RXO Solutions' only member or principal. See March 27 Tr. at 5:6-6:15 (Court, Winston).

Bedrock Logistics represents to the Court, via letter, that: (i) at the time of filing,[5] the Schlegel-Bedrock Family Trust's beneficiaries and trustee were Texas citizens; and (ii) at the time of filing, Four-K Investments' partners were each Texas citizens (identifying each partner). See Notice by Bedrock Logistics, LLC, Members and principals of Defendant Bedrock Logistics, LLC at 1-2, filed April 4, 2024 (Doc. 80). Dubai Express represents to the Court, via letter, that Advikima Abrahim "is the only principal and member of Dubai Express Haul," and "is a citizen of the State of Nebraska." Letter from John S. Stiff, Sr., to Court at 1 (dated March 27, 2024), filed March 27, 2024 (Doc. 125). RXO Solutions represents to the Court, via letter, that: (i) Defendant RXO Solutions' only member or principal is RXO Corporate Solutions; LLC; (ii) RXO Corporation Solutions, LLC's only member or principal is RXO, Inc.; and (iii) RXO, Inc. is a publicly traded corporation, incorporated in Delaware, with its principal place of business in North Carolina. See Notice by XPO Logistics, LLC, RXO Capacity Solutions, LLC's Letter Confirming Citizenship at

---

reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

[5]The parties do not indicate which "filing" they reference -- the filing of the original complaint, the notice of removal, or both. "When diversity jurisdiction is the basis for removal, diversity must exist both at the time the action is filed in state court and at the time the case is removed to federal court." Woods v. Ross Dress for Less, Inc., 833 F. App'x 754, 757 (10th Cir. 2021). No party contends that this is a material issue, and the Court has no reason to believe that any citizenships changed between the filing of the original complaint and the notice of removal. Accordingly, the Court concludes that each representation referring to "the time of filing" describes a party's citizenship both when the case was filed originally and removed later.

1, filed March 28, 2024 (Doc. 76).  In sum, by April 4, 2024, Bedrock Logistics, Dubai Express, and RXO Solutions represented to the Court that each of their members or principals is a citizen of a State other than New Mexico.

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 (D.N.M. August 27, 2012)(Browning, J.)(quoting 28 U.S.C. § 1332(a)).  As the Court previously has explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. February 9, 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)).  Because the amount-in-controversy is not disputed, the Court must evaluate only whether complete diversity exists to establish subject matter jurisdiction.

For diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").  If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is

that of his or her parents at the time of the person's birth.  See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin.  The domicile of origin which the law attributes to an individual is the domicile of his parents.  It continues until another domicile is lawfully acquired.").  Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).  A corporation, on the other hand, is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)).  The United States Court of Appeals for the Tenth Circuit has adopted "the following rule for determining the citizenship of a non-corporate artificial entity," such as limited partnerships and limited liability companies: "'diversity jurisdiction in a suit by or against the [artificial] entity depends on the citizenship of all the members, the several persons composing such association, each of its members.'"  Conagra Foods, Inc. v. Americold Logistics, LLC, 776 F.3d 1175, 1180 (10th Cir. 2015)(quoting Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990)).  See Zufelt v. Isuzu Motors Am., LLC, 727 F. Supp. 2d 1117, 1127 (D.N.M. 2009)(Browning, J.)(citing Carden v. Arkoma Assocs., 494 U.S. at 195; Two Old Hippies, LLC v. Catch the Bus, LLC, 784 F. Supp. 2d 1221, 1229 (D.N.M. 2011)(Browning, J.)(quoting Wise v. Wachovia Securities, LLC, 450 F.3d 265, 287 (7th Cir. 2006)(Posner, J.)); Lenon v. St. Paul Mercury Ins. Co., 136 F.3d 1365, 1371 (10th Cir. 1998); Siloam Springs Hotel, LLC v. Century Sur. Co., 781 F.3d 1233, 1234 (10th Cir. 2015)("Like every other circuit to consider this question, this court concludes an LLC, as an unincorporated association, takes the citizenship of all its members.")(citing Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419-20 (3d Cir. 2010)).

The named LLC Defendants have represented to the court that each of their members is a foreign citizen. Accordingly, there exists complete diversity among the parties, and the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

Regarding the Motion to Remand's second primary issue, i.e., whether all served defendants consented to removal, Chasar asserts that "no defendant filed a timely consent [to Bedrock Logistics' removal], with only defendants Dubai Express Haul, LLC and Abdifatah Mahamed Ismail filing an untimely consent to removal on November 2nd." Motion to Remand at 5. Bedrock Logistics disagrees with Chasar's assertion, arguing that all of the Defendants consented to removal, as represented in the Notice of Removal and the Amended Notice of Removal, "both of which were signed pursuant to Rule 11." Defendant's Response in Opposition to Plaintiff Steven Chasar's Motion to Remand at 9, filed December 15, 2023 (Doc. 36)("MTR Opp.")(citing Notice of Removal ¶ 31 at 6; Amended Notice of Removal ¶ 31 at 6). Bedrock Logistics also provided the Court with email attachments indicating that Dubai Express, Defendant Abdifatah Mahamed Ismail, RXO Solutions, Defendant Jacobson Logistics Company, Defendant Jacobson Transportation Company, Inc., and Defendant Trident Leasing, Inc., consented to Bedrock's removal. See Email Correspondence among Sky Willard, Lauren T. Winston, Denise Soto Hall, and John S. Stiff (dated October 30-November 2, 2023), filed December 15, 2023 (Doc. 36-1). At the January 31 hearing, counsel for Dubai Express, Ismail, RXO Solutions, Jacobson Logistics, Jacobson Transportation, and Trident Leasing confirmed their clients' consent to removal. See January 31 Tr. at 62:10-63:4 (Snow, Court, Sparks), id. at 64:22-65:8 (Court, Soto Hall).

The right to removal is a statutory right, and the removing defendant must follow carefully all statutory requirements. See Bonadeo v. Lujan, No. CIV 08-0812, 2009 U.S. Dist. LEXIS 45672, at *9-10 (D.N.M. Apr. 30, 2009)(Browning, J.); Chavez v. Kincaid, 15 F. Supp. 2d 1118,

1119 (D.N.M. 1998)(Campos. J.)("The right to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").  Section 1446 of Title 28 of the United States Code, which controls the procedure for removal of a state action to federal court, states:

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).  The defendant must file the notice of removal within thirty days after being served.  See 28 U.S.C. § 1446(b).

The removal statute speaks generally to the manner of removal. It does not require explicitly that all defendants who have been served in a multi-defendant case must join in the notice of removal.  See McEntire v. Kmart Corp., No. CIV 09-0567, 2010 U.S. Dist. LEXIS 13373, at *12 (D.N.M. Feb. 9, 2010)(Browning, J.).   The Tenth Circuit has stated, however, that the general removal rule "require[s] all defendants to join in the removal petition."  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998).  See Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981)("A co-defendant, Interstate Book Company, did not join in the petition for removal and the petition was thus procedurally defective."); McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *12 ("A notice of removal fails if this procedural requirement is not met."); Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *13 ("Although the procedure for a notice of removal set out in 28 U.S.C. § 1446(b) is couched in terms of a single defendant, courts have held that all defendants must join a removal petition or removal will be defective.")(citing Cornwall v. Robinson, 654 F.2d at 686).  This requirement, that all defendants served at the time of filing must join in the notice of removal, is generally referred to as the unanimity rule.  See McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *12.   Remand is required if all of the defendants fail to

consent to the petition for removal within thirty days of being served. See Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at \*15 (citing Chicago, R. I. & P. Ry. Co. v. Martin, 178 U.S. 245, 247-48 1900)

The Tenth Circuit has not stated, however, what is necessary to satisfy the requirement that all defendants "join in the removal petition." Akin v. Ashland Chem. Co., 156 F.3d at 1034. See Roybal v. City of Albuquerque, No. CIV 08-181, 2008 U.S. Dist. LEXIS 108749, at \*13 (D.N.M. Sept. 24, 2008)(Browning, J.)("There is apparently no opinion from the Tenth Circuit that requires more than the representation of consent in the notice of removal."). "[T]he circuits are split as to exactly what form a co-defendant's joinder must take." 16 J. Moore & G. Vairo, Moore's Federal Practice § 107.11[1][c], at 107-38 (3d ed. 2010). Most courts have declined to require all defendants to sign the notice of removal. See Pritchett v. Cottrell, Inc., 512 F.3d 1057, 1062 (8th Cir. 2008)("While the failure of one defendant to consent renders the removal defective, each defendant need not necessarily sign the notice of removal."); McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at \*12 ("Most, if not all, courts have declined to require all defendants to sign the same notice of removal.")(citing Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 n.11 (5th Cir. 1988); McShares, Inc. v. Barry, 979 F. Supp. 1338, 1342 (D. Kan. 1997); Jarvis v. FHP of Utah, Inc., 874 F. Supp. 1253, 1254 (D. Utah 1995)).

While some judges "require more than a representation in the notice of removal by one defendant that it has the consent of all other defendants . . . [t]his Court has not clearly adopted such a strict requirement." Serna v. Cooksey, No. CIV 20-0689 JB/KRS, 2021 WL 765415, at \*11. (D.N.M. Feb. 27, 2021)(Browning, J.). See Roybal v. City of Albuquerque, No. CIV08-181 JB/LFG, 2008 WL 5991063, at \*8 (D.N.M. Sept. 24, 2008)(Browning, J.)(discussing reasoning for not requiring separate consents from each defendant); Tresco, Inc. v. Cont'l Cas. Co., 727 F.

Supp. 2d 1243 (D.N.M. 2010)(Browning, J.)("Nothing in rule 11 prohibits counsel for one defendant from making representations on behalf of another defendant, or that defendant's counsel.").

In both the Notice of Removal and Amended Notice of Removal, Bedrock Logistics represents that all served Defendants consent to removal.  At subsequent hearings, counsel for each served Defendant confirm their clients' consent to removal.  Chasar contends, however, that Defendant Abdihamid Abdule did not consent to removal.  See Plaintiff Steven Chasar's Reply in Support of His Motion to Remand at 6, filed December 20, 2023 (Doc 40)("Motion to Remand Reply"); Plaintiff Steven Chasar's Supplemental Briefing in Support of His Motion for Remand at 2-3, filed April 3, 2024 (Doc. 78)("MTR Supplemental Briefing Motion"); Supplemental Briefing Reply at 2-6.  Although "arguments raised for the first time in a reply brief are generally deemed waived," United States v. Harrell, 642 F.3d 907, 918 (10th Cir. 2011), the Court will, as stated on the record in the March 27 hearing, see March 27 Tr. at 12:3-13, consider Chasar's arguments regarding Abdule's consent to removal.  In short, Chasar contends that he properly served Abdihamid Abdule on November 1, 2023, and Abdule did not consent to removal within thirty days of service.  See, e.g., Motion to Remand Reply at 6-7.  In response, Bedrock Logistics contends that Chasar did not serve Abdihamid Abdule properly.  See Response in Opposition to Plaintiff Steven Chasar's Supplemental Briefing in Support of His Motion to Remand at 4, filed April 24, 2024 (Doc. 92)("MTR Supplemental Briefing Response").  The Court agrees with Bedrock Logistics that Chasar did not serve Abdule properly.

"The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction," and "[f]acts regarding jurisdictional questions may be determined by reference to affidavits."  Fed. Deposit Ins. Corp. v. Oaklawn

Apartments, 959 F.2d 170, 174 (10th Cir. 1992). "It is clear that jurisdictional facts must ultimately be established by a preponderance of the evidence where they are disputed." Kibler v. Genuine Parts Co., No. CIV 17-0486 RB/SCY, 2017 WL 4410786, at *4 (D.N.M. Oct. 2, 2017)(Brack, J.). "[F]ederal courts in removed cases look to the law of the forum state . . . to determine whether service of process was perfected prior to removal." Wallace v. Microsoft Corp., 596 F.3d 703, 706 (10th Cir. 2010). See also Solis v. Gilles, No. 10-CV-952 JAP/ACT, 2011 WL 13284657, at *4 (D.N.M. July 5, 2011)(Parker, J.)("Because this case was originally filed in New Mexico state court, the forum law applicable to service of process on [foreign citizens] TRH and Gilles is the law of New Mexico."); Solis v. M&T Bank, No. 16-2563-DDC-GLR, 2016 WL 6905888, at *2 (D. Kan. Nov. 22, 2016)("Because plaintiff filed this case in Kansas state court, the court looks to Kansas law to determine if she perfected service."). "The burden of establishing validity of service is on the plaintiff." Salazar v. City of Albuquerque, 278 F.R.D. 623, 626 (D.N.M. 2011)(Browning, J.)(citing Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d at 174).

Because Chasar originally filed this action in New Mexico state court, the Court evaluates the sufficiency of Chasar's service of process under New Mexico law.[6] After "attempt[ing] to

---

[6]Professors Charles Wright and Arthur Miller provide: "In determining the validity of service in the state court prior to removal, a federal court must apply the law of the state under which the service was made." 4A C. Wright & A. Miller, Federal Practice & Procedure § 1082, at 594-95 (4th ed. 2024)(footnote omitted)("Wright & Miller"). While the phrase, "state under which the service was made," is vague, the Court understands it to mean "the forum state." See 4A Wright & Miller, supra § 1082, at 594-95; Wallace v. Microsoft Corp., 596 F.3d 703, 706 (10th Cir. 2010). The sentence's footnote cites to cases that apply the law of the State in which the case was filed, rather than the State where service was effectuated. See 4A Wright & Miller, supra § 1082 n.6, at 595-96 (citing, e.g., Wallace v. Microsoft Corp., 596 F.3d 703, 706 (10th Cir. 2010), Mealer v. GMAC Mortg. LLC, No. 3:10-CV-08172 JWS, 2010 WL 4586183, at *2-3 (D. Ariz. Nov. 2, 2010)(Sedwick, J.)(applying Arizona service of process rules where plaintiff filed case in Arizona State court and served Defendant via certified mail in Michigan), and Perez v. L-3 Commc'ns Corp., No. EP-06-CA-22-PRM, 2006 WL 1788182, at *2 (W.D. Tex. June 26,

serve process on Abdule at two different addresses on four separate occasions but was unsuccessful," Chasar's process server "contacted Abdule by phone and was able to confirm his address," although "Abdule would not agree to meet with the process server to allow for service and, after a series of phone calls, told him to stop calling or he would call the police, and then hung up." Supplemental Briefing Reply at 3. Eventually, Chasar "sent the summons and First Amended Complaint to Abdule via both regular mail and certified mail," and Abdule's wife "signed for and picked up [the papers] from the post office." Supplemental Briefing Reply at 3. See Proof of Service of Summons on Abdihamid Abdule ¶ 5-7, at 3-4, 6, 8 (executed November 11, 2023), filed December 20, 2023 (Doc. 40-2)(indicating that process server swears under oath that he mailed the papers to Abdule's address and received a signed receipt, which is also provided, indicating that someone picked up the papers at 10:31 A.M. CDT on November 1, 2023). Chasar does not challenge the Defendants' statements that, "[p]rior the filing of the Notice of Removal, Plaintiffs filed six returned notices of service in state court indicating service on the aforementioned Defendants," MTR Supplemental Briefing Response at 2, which does not include Abdule's alleged proof of service, and that Chasar filed Abdule's alleged proof of service on December 20, 2023, nearly two months after the alleged service and outside the thirty-day consent window, as an exhibit to his Motion to Remand Reply, see MTR Supplemental Briefing Response at 2-3. Accepting these facts as true, the Court concludes that service was not proper. New Mexico law provides:

---

2006)(Martinez, J.)("The adequacy of service of process effectuated prior to removal is governed by the law of the state in which the action was originally filed."). Even applying Nebraska law, however, the Court concludes that service was not proper because Nebraska law does not provide that a spouse may accept service by signing a certified mail receipt. See Neb. Rev. Stat. Ann. § 25-505.01.

(3)     Service may be made by mail or commercial courier service provided that the envelope is addressed to the named defendant and further provided that the defendant or a person authorized by appointment, by law or by this rule to accept service of process upon the defendant signs a receipt for the envelope or package containing the summons and complaint, writ or other process.

N.M.R.A. 1-004(E)(3).  Chasar has not provided the Court any authority stating that a spouse is authorized to accept service of process in New Mexico by signing a certified mail receipt.[7]  In fact, in an unpublished opinion, the Court of Appeals of New Mexico concludes that service under analogous circumstances is improper:

> Below, Plaintiff took the position that the mailing of the complaint and summons to Defendant's residence and place of business was sufficient under Rule 1-004(F)(2) . . . which allows for service "by delivering a copy of the process to some person residing at the usual place of abode of the defendant who is over the age of fifteen (15) years and mailing by first class mail to the defendant at the defendant's last known mailing address[.]"  However, Plaintiff does not appear to have accomplished "delivery," only the mailing.  And further, as we previously observed in the notice of proposed summary disposition, service pursuant to subsection (F)(2) is only permissible after first unsuccessfully attempting to serve process personally, by leaving the documents "at the location where the individual

---

[7]Chasar cites one inapposite case for this proposition: Norris v. Causey, 869 F.3d 360 (5th Cir. 2017).  In Norris v. Causey, the United States Court of Appeals for the Fifth Circuit evaluates whether service is proper under New Mexico, Louisiana, or federal law where the process server left a copy of the summons and complaint at an address where the defendant and his wife previously had refused to accept service.  See Norris v. Causey, 869 F.3d at 368-71.  At issue in Norris v. Causey is not whether the defendant's wife was "authorized by appointment, by law or by this rule to accept service of process," N.M.R.A 1-004(E)(3), by signing a certified mail receipt, but whether she was actually at the residence "on the day the process server posted the documents," 869 F.3d at 370, because New Mexico allows "substituted service," which "entails leaving a copy of the summons and complaint at the individual's usual place of abode with someone of suitable age and discretion." Norris v. Causey, 869 F.3d at 368.  Here, Chasar does not assert that his process server left the summons and complaint with Abdule's wife at Abdule's residence.

Chasar also cites two treatises for this proposition, neither of which say that, under New Mexico law, a spouse may accept service by signing a certified mail receipt. See 4B Wright & Miller, supra § 1147, at 464 ("[S]ervice upon the spouse of the person to be served at their dwelling place is valid under [rule 5(b) of the Federal Rules of Civil Procedure.]")(brackets added); 62B Am. Jur. 2d Process § 194, at 714-15 (2d ed. 2024)("In some states, the statutes or rules provide for abode service by leaving a copy of the summons with a 'member' or 'person' of the defendant's 'family' . . . .  Service on the spouse will usually be valid and proper.")(internal quotes have no citations).

has been found," or by mail as described in Rule 1-004(E)(3). We find no indication that Plaintiff attempted to serve Defendant personally or "at the location where [he has been] found."

This brings us to Rule 1-004(E)(3). In her memorandum in opposition, Plaintiff asserts that service of process was accomplished in accordance with Rule 1-004, subparts (E)(3) and (F)(1)(b). . . . Together, these provisions specify that an individual may be served by mail "provided that the envelope is addressed to the named defendant and further provided that the defendant or a person authorized by appointment, by law or by this rule to accept service of process upon the defendant signs a receipt[.]" Although the envelope appears to have been properly addressed, we find no indication in either the record or the memorandum in opposition that the individual who signed for the documents was "authorized by appointment, by law or by this rule" to accept service of process on Defendant's behalf. Plaintiff's attempt to effectuate service of process on the business suffers from the same deficiency. See Rule 1-004(G)(3) NMRA. Accordingly, we are unpersuaded by Plaintiff's assertion that service of process was effectuated in accordance with the requirements of Rule 1-004.

Roybal v. Roybal, No. 29,806, 2010 WL 3971587, at *2 (N.M. Ct. App. Jan. 6, 2010)(ellipses

added). In Roybal v. Roybal, "an individual identified only as Dawn Roybal signed for the

documents" addressed to the Defendant Greg Roybal. 2010 WL 3971587, at *1. While this

unpublished opinion is not binding on the Court, it is instructive. The Court concludes that Chasar

did not serve Abdule properly by sending certified mail to Abdule and having Abdule's wife sign

for it: Chasar neither delivered the documents to someone over the age of fifteen at Abdule's

residence, nor had someone who was authorized to accept service for Abdule sign for the

documents. Alternatively, Chasar argues that service is proper under N.M.R.A. 1-004(F)(1)(a),

which provides that, "if the individual refuses to accept service, by leaving the process at the

location where the individual has been found; and if the individual refuses to receive such copies

or permit them to be left, such action shall constitute valid service." Supplemental Briefing Reply

at 3-4. Chasar's process server did not leave, however, the summons and complaint at Abdule's

residence, or attempt to leave them at Abdule's residence, and thus Chasar does not comply with

N.M.R.A. 1-004(F)(1)(a). Accordingly, Chasar has not served Abdule properly such that Bedrock

Logistics needs his consent to remove this case, and, because all properly served Defendants consent to removal, removal is proper under 28 U.S.C. § 1446(b). Because there exists complete diversity among the parties and all Defendants timely consented to Bedrock Logistics' removal, the Court denies Chasar's Motion to Remand.

## III. THE COURT DENIES BEDROCK LOGISTICS' MOTION TO STRIKE BECAUSE THE OBJECTIONS DO NOT VIOLATE ANY FEDERAL OR LOCAL RULES.

Regarding the Motion to Strike, the primary issue is whether the Objections is a document that the Court may and should strike from the record pursuant to rule 12(f) of the Federal Rules of Civil Procedure. The Motion to Strike requests that the Court strike Chasar's Objections, which allege that Bedrock's Amended Notice of Removal, filed November 17, 2023 (Doc. 21)("Amended Notice of Removal"), contains representations "based on lack of personal knowledge and hearsay." Amended Notice of Removal at 2. The Motion to Strike asserts that the Objections "are improper and not brought pursuant to the Federal Rules of Civil Procedure or the statutory provisions of removal and are otherwise unsupported by the law." Motion to Strike at 2. Whether the Objections are brought pursuant to the Federal Rules of Civil Procedure or pursuant the statutory provisions of removal, or are otherwise meritorious does not compel the Court to strike them from the record. Rather, the Court must determine whether the Objections fall within the scope of rule 12(f), which prescribes procedures for granting motions to strike. Rule 12(f) of the Federal Rules of Civil Procedure provides:

> **(f)    Motion to Strike.**  The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
>
> (1)    on its own; or
>
> (2)    on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). "'Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike.'" Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps., No. 08-cv-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009)(Wiley, J.)(quoting 2 J. Moore & G. Vairo, Moore's Federal Practice § 12.37[2] (3d ed. 2004)). Accord Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009)(Browning, J.)(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490 at *1, *4 (10th Cir. 1992))("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike."). "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'" Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (quoting Fed. R. Civ. P. 7(a)).

Moreover, Professors Charles Wright and Arthur Miller have recognized, that motions to strike are not favored and, generally, the court should deny them:

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy . . .

5C C. Wright & A. Miller, Federal Practice & Procedure § 1382, at 319-23 (4th. ed. 2024)("Wright & Miller")(footnotes omitted). Accord Burget v. Capital W. Sec., Inc., No. CIV-09-1015, 2009 WL 4807619, at *1 (W.D. Okla. Dec. 8, 2009)(Miles-LaGrange, C.J.)(citing Scherer v. U.S. Dep't

of Educ., 78 F. App'x 687, 689 (10th Cir. 2003)(unpublished)[8])("While motions to strike are

generally disfavored, the decision to grant a motion to strike is within the discretion of the court.")).

 "'Allegations will not be stricken as immaterial under this rule unless they have no possible

bearing on the controversy.'" Estate of Gonzales v. AAA Life Ins. Co., No. CIV 11-0486

JB/WDS, 2012 WL 1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting Sai Broken

Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455, 2010 WL 132414, at *5

(N.D. Okla. Jan 8, 2010)(Eagan, C.J.)).   Wright & Miller also comments on what constitutes

"immaterial" matter in the context of a motion to strike.  5C Wright & Miller, supra, § 1382, at

344-48 (footnotes omitted).   "'Immaterial' matter is that which has no essential or important

relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary

particulars in connection with and descriptive of that which is material."  5C Wright & Miller,

supra § 1382, at 344-45 (footnotes omitted).

 "'Striking a pleading or part of a pleading is a drastic remedy and because a motion to

strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are

disfavored.'"  Estate of Gonzales v. AAA Life Ins. Co., No. Civ 11-0486 JB/WDS, 2012 WL

---

[8]Scherer v. U.S. Dep't of Educ. is an unpublished opinion, but the Court can rely on
an unpublished 10th Circuit opinion to the extent its reasoned analysis is persuasive in the
case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not
precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we
> have generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive
> value with respect to a material issue in a case and would assist the court in its
> disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that
Scherer v. U.S. Dep't of Educ. and Woods v. Ross Dress for Less, Inc., 833 F. App'x 754, (10th
Cir. 2021) have persuasive value with respect to a material issue and will assist the Court in its
disposition of this Order.

1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting Sai Broken Arrow C, LLC, 2010 WL 132414, at *5). "The exception to this principle is that a Court may 'choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court.'" Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (citing In re Hopkins, 162 F.3d 1173, 1998 WL 704710 at *3 (10th Cir. 1998)).

For example, in Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2012 WL 6846386 (D.N.M. Dec. 31, 2012)(Browning, J.), the Court denies a motion to strike a letter filed with the Court, because the letter is not a pleading, and does not pertain to either party's legal defenses or arguments; the letter expresses one party's position regarding whether the Court should rule on summary judgment motions pending at the close of a bench trial. See 2012 WL 6846386, at *6. Similarly, in Great American Insurance v. Crabtree, No. CIV 11- 1129, 2012 WL 3656500 (D.N.M. Aug. 23, 2012 )(Browning, J.), the Court denies a plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because they are neither pleadings nor irrelevant. See 2012 WL 3656500, at *18. In Applied Capital, Inc. v. Gibson, No. CIV 05-0098, 2007 WL 5685131 (D.N.M. 2007)(Browning, J.), the Court refuses the plaintiff's request to strike a motion to dismiss, because rule 12(f) applies only to pleadings and not to a motion to dismiss. See Applied Capital, Inc. v. Gibson, 2007 WL 5685131, at *18. In Estate of Anderson v. Denny's, Inc., 291 F.R.D. 622, 635 (D.N.M. 2013)(Browning, J.), the Court denies the plaintiff's request to strike a notice of completion of briefing for similar reasons. See 291 F.R.D. at 635. In Jaramillo v. Astrue, No. CIV 11-0906 JB/ACT, 2013 WL 5934347 (D.N.M. Sept. 30, 2013)(Browning, J.), the Court denies a motion to strike the defendant's reply to the plaintiff's response to the defendant's objections to the Magistrate Judge's Report and Recommendation because the motion to strike does "not address material contained in a 'pleading.'" 2013 WL 5934347, at *3.

The Motion to Strike neither (i) addresses material in a "pleading," as rule 7(a)'s text has defined; nor ii) identifies a local rule that the Objections violate. Accordingly, the Court denies the Motion to Strike.

**IT IS ORDERED** that: (i) Defendant Bedrock Logistics, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6), filed November 9, 2023 (Doc. 14), is granted; (ii) Plaintiff Steven Chasar's Motion to Remand, filed December 1, 2023 (Doc. 28), is denied; and (iii) Defendant Bedrock Logistics, LLC's Motion to Strike Plaintiff's Evidentiary Objections to Defendant Bedrock Logistics, LLC's Amended Notice of Removal, filed December 5, 2023 (Doc. 33), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Timothy A. Loranger
Matthew P. French
Crawford Appleby
Wisner Baum LLP
Los Angeles, California

-- and –

C. Lincoln Combs
O'Steen & Harrison, PLC
Phoenix, Arizona

*Attorneys for the Plaintiff*

Lee R. Hunt
Aimee S. Bevan
Cynthia Zedalis
Hunt Law Firm
Santa Fe, New Mexico

*Attorneys for the Plaintiff McKenna Alboreo and Dennis P. Murphy*

John S. Stiff
Stiff, Garcia & Associates, LLC
Albuquerque, New Mexico

-- and --

Brian J. Fisher
Ryan T. Goodhue
Mayer LLP
Albuquerque, New Mexico

*Attorneys for Defendants Dubai Express Haul, LLC and Abdifatah Mahamed Ismail*

Mark D. Blosser
Seth L. Sparks
Lauren T. Winston
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

*Attorneys for Defendants RXO Capacity Solutions, LLC;*

Mark D. Blosser
Seth L. Sparks
Lauren T. Winston
Kara Murphy
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

*Attorneys for Jacobson Logistics Company, LC; and Jacobson Transportation Company*

Denise Suzanne Soto Hall
Ray Lego & Associates
St. Paul, Minnesota

*Attorneys for Defendant Trident Leasing, Inc.*

Raul P. Sedillo
Jones, Skelton & Hochuli, P.L.C.
Albuquerque, New Mexico

*Attorneys for Defendant Bedrock Logistics, LLC*

Penelope M. Quintero
Richard M. Padilla
O'Brien & Padilla, P.C.

Albuquerque, New Mexico

   *Attorneys for Defendant Abdihamid Abdule*

Steven J. Gross
The Cavanaugh Law Firm, P.A.
Phoenix, AZ

   *Attorneys for Defendant Pennsylvania Manufacturers; Association Insurance Company*