IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUAN CARLOS LEON-HERRERA,

      Plaintiff,

v.                                                          Case No. 2:24-cv-00153-MIS/GJF

JORGE ZUNIGA ISAIS d/b/a RVJ
TRANSPORT; CUSTOM PRO
LOGISTICS, LLC; THEY SYGMA
NETWORK, INC.; AND CAL FRESCO,
LLC.

      Defendant.

## DEFENDANT CUSTOM PRO LOGISTICS, LLC'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, Custom Pro Logistics, LLC ("Defendant" or "Custom Pro"), by and through its counsel of record, Mayer LLP (Brian J. Fisher and J. Ashley Cummings), submits this Reply in Support of its Motion to Dismiss and states the following:

## I.    INTRODUCTION

In the underlying accident made the basis of this litigation, Custom Pro acted as a freight broker in relation to the subject load being hauled by Plaintiff, Juan Carlos Leon-Herrera ("Plaintiff" or "Leon-Herrera"). The role of freight brokers, such as Custom Pro, is to appoint authorized motor carriers to transport cargo. Congress specifically recognized that freight brokers are _not_ motor carriers. Nonetheless, in his Response in Opposition to Custom Pro's Motion to Dismiss ("Plaintiff's Response"), Plaintiff sets forth two arguments: (1) Custom Pro was acting as a motor carrier – rather than a freight broker – with respect to the subject load, and (2) the claims as

alleged in Plaintiff's proposed (and opposed) Second Amended Complaint are not subject to federal preemption.

With respect to Plaintiff's first argument, two facts are abundantly clear based on Plaintiff's First Amended Complaint, which is the current live pleading on file with this Court: (1) Custom Pro did not own the involved tractor-trailer driven by Plaintiff at the time of the incident made the basis of this lawsuit, and (2) Custom Pro did not employ Plaintiff. In his First Amended Complaint, Plaintiff admits that that "Defendant Cal Fresco hired Zuniga to deliver produce for Sygma through a third-party broker, Defendant Custom Pro" and that Custom Pro "brokered the trips with Cal Fresco and/or Sygma on behalf of Zuniga." [Doc. 30 at ¶¶ 3.1; 4.9 (and generally)] Lastly, Plaintiff admits that he "was hired by Defendant RVJ as a long-haul driver" to operate a tractor-trailer owned and operated "under the direction and/or supervision of Defendant Zuniga." [Doc. 30 at ¶ 3.4] Considering all these facts as true, Plaintiff fails to state a plausible claim for relief against Custom Pro, and dismissal is proper.

As it relates to Plaintiff's second argument, Plaintiff first filed his Original Complaint on February 14, 2024, and asserted claims against Bar-S Foods Co d/b/a Sigma Foods and Jorge Zuniga Isais d/b/a RVJ Transport ("Defendant Zuniga"). [Doc. 1] On August 6, 2024, Plaintiff filed a Motion for Leave to Amend the Complaint, admitting that Defendant Zuniga produced the bill of landing relating to the incident made the basis of this lawsuit which "allowed Plaintiff to identify the appropriate parties." [Doc. 26] Plaintiff's First Amended Complaint brought claims against

several new parties, including Custom Pro. After being served with the First Amended Complaint, Custom Pro filed its Motion to Dismiss the claims asserted against it on October 25, 2024. [Doc. 41]

Only after being faced with a Motion to Dismiss did Plaintiff move (on the same date his Response to Custom Pro's Motion to Dismiss was due) to amend the First Amended Complaint and allege that Custom Pro was operating as a motor carrier. [Doc. 52]. However, Plaintiff admits he had the very document he now contends supports the allegation that Custom Pro operated as a motor carrier – the bill of landing – since at least August 6, 2024, and before filing the Motion for Leave to file his First Amended Complaint. [Doc. 26] It logically follows that Plaintiff's reference to this "additional evidence" is solely for the purpose to maintain the frivolous claims asserted against Custom Pro. [Doc. 52 at ¶ 3] As addressed in further detail in Custom Pro's Response in Opposition to Plaintiff's Motion for Leave to Amend First Amended Complaint, the Court should deny Plaintiff's request for leave to yet again amend his live pleading due to Plaintiff's failure to timely to do so since the "additional evidence" upon which amendment is now sought is based on materials in Plaintiff's possession since before the first claims against Custom Pro were ever asserted. *See Glass v. XTO Energy Inc.,* 2022 WL 17475489, at *3 (D.N.M. Dec. 6, 2022) (concluding that a court should deny a motion to amend with plaintiff seeks to "make the complaint a moving target"); *see also Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (stating that when a party seeks to amend a complaint based on facts it knew or should have know when filing a prior complaint,

"the motion to amend is subject to denial").

Custom Pro respectfully requests that the Court dismiss all of Plaintiff's causes of action (direct and otherwise) against Custom Pro since Plaintiff's state-law negligence claims against Custom Pro – a judicially admitted freight broker – are preempted by 49 U.S.C. § 14501(c)(1) and do not fall within the safety exception of § 14501(c)(2)(A).

## II.    LEGAL ARGUMENTS TO THE REPSONSE IN OPPOSITION

### A.    The exhibits attached to Plaintiff's Response may properly be ignored.

As an initial matter, this Court may properly disregard all evidence attached to Plaintiff's Response. When considering a Motion to Dismiss, the sufficiency of a complaint must generally rest on its contents alone, rather than considering evidence outside the complaint. *Anderson Living Tr. v. WPX Energy Prod., LLC*, 27 F. Supp. 3d 1188, 1210 (D.N.M. 2014). There are two exceptions to this general rule: (1) when the complaint refers to undisputedly authentic documents by reference, and those documents are central to the plaintiff's claims; and (2) matters on which a court may take judicial notice. *Id.* In the instant matter, neither of these exceptions apply. It is undisputed that the Plaintiff's First Amended Complaint does not refer to the bills of landing or text messages attached to Plaintiff's Response, so the first exception clearly does not apply. With respect to the second exception, courts tend to take judicial notice of documents that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1217 (D.N.M. 2013) (referring to FED. R. EVID.

201(b)). Given that bills of landing and text messages are not the types of materials that can be easily assessed for accuracy, the requirements for the second exception also cannot be met.

**B.    Plaintiff fails to assert viable direct negligence claims against Custom Pro and dismissal is proper based on federal preemption under the FAAAA.**

The applicable pleading standard requires a complaint to contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face," but that such standards do not apply to legal conclusions or "formulaic recitations of the elements of a cause of action." *See Ashcroft v. Iqba*l, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). More specifically, the Tenth Circuit has held that:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). On its face, Plaintiff's Response fails to direct this Court to any plausible factual allegations demonstrating that any of the claims asserted against Custom Pro in the Complaint meet this standard. *Id.*

**1.    Plaintiff's operative Complaint illustrates that Zuniga – not Custom Pro – was the motor carrier involved in the incident made the basis of this lawsuit.**

Because Plaintiff correctly alleges in the First Amended Complaint that Custom Pro was acting as a freight broker in the incident made the basis of this

lawsuit, Plaintiff's direct negligence claims against Custom Pro are subject to federal preemption. Plaintiff's heavy reliance on *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, (11th Cir. 2018) to support his argument that Custom Pro was acting as a motor carrier is misplaced as the involved facts are not comparable. In *Essex*, one of the questions before that court was what elements distinguished a freight broker from a motor carrier pursuant to the Carmack Amendment (which is not relevant to the claims asserted here). *Id* It is critical to note that the party claiming to be a broker in *Essex* played two roles in the transportation of the shipment at issue in (1) transporting one part of the shipment with its own truck and driver, and (2) arranging another part of the shipment to be transported by a third-party carrier. *Id.* at 1300. While Plaintiff's Response notes that one of the inquiries utilized to determine whether a party was acting as a freight broker or motor carrier is whether it accepted legal responsibility to transport the shipment, Plaintiff has made no such allegations in his First Amended Complaint.

    In this case, Plaintiff's First Amended Complaint makes it abundantly clear that all parties to the subject transaction were fully aware that Zuniga was the motor carrier responsible for the load. Plaintiff himself alleges that Cal Fresco hired Zuniga to deliver produce for Sygma through a third-party broker, Custom Pro [Doc. 30 ¶ 3.1] Further, Plaintiff admits that he "was hired by Defendant RVJ as a long-haul driver" to operate a tractor-trailer that was owned and operated "under the direction and/or supervision of Defendant Zuniga." [Doc. 30 ¶ 3.4] Assuming these facts are true as is proper in considering a motion to dismiss, it is only plausible to conclude

that there was one carrier involved in this transaction – Defendant Zuniga. Plaintiff's attempt to ignore the very facts that he admits in his First Amended Complaint in an effort to maintain claims against Custom Pro fails to create a set of facts that would support his claim of relief pursuant to his argument that Custom Pro was acting as a motor carrier rather than a freight broker, and Plaintiffs claims asserted against Custom Pro should be dismissed based on federal preemption. *Ash Creek Min. Co. v. Lujan*, 969 F.2d 868 (10th Cir. 1992).

### 2. Plaintiff's operative Complaint fails to assert viable claims of vicarious liability against Custom Pro.

Plaintiff's Response fails to direct this Court to any plausible factual allegations demonstrating that a claim of vicarious liability against Custom Pro is supported by the allegations contained in his First Amended Complaint. As an initial matter, Plaintiff points to no specific allegations in the First Amended Complaint with which this Court may determine plausible factual allegations exist. Plaintiff provides no meaningful explanation of how the general allegations in the First Amended Complaint supposedly meet the requisite pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Nonetheless, Plaintiff's First Amended Complaint fails to demonstrate that Custom Pro acted as a motor carrier, but rather admits that Custom Pro acted as a freight broker. [Doc. 30 at ¶¶ 3.1; 4.9 (and generally)] (stating that that "Defendant Cal Fresco hired Zuniga to deliver produce for Sygma through a third-party broker, Defendant Custom Pro" and Custom Pro "brokered the trips with Cal Fresco and/or Sygma on behalf of Zuniga."). Without the ability to point the Court to plausible

allegations to support that Custom Pro was a motor carrier rather than a freight broker, Plaintiff's reliance on 49 C.F.R. § 390.11 is inapplicable. Further, because Plaintiff's Second Amended Complaint is not the operative Complaint in this case, the reliance on claims related to allegations that Defendant Zuniga was a statutory employee of Custom Pro, found only in the proposed Second Amended Complaint (for which leave to file has not been granted and is opposed), are inapplicable here.

For these reasons, this Court may find that Plaintiff failed to meet the applicable pleading standard and dismiss the insufficiently pled negligence claims generally asserted against Custom Pro. *See Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1080 (10th Cir. 2010).

## C.    The cases cited by Custom Pro recognizing preemption under the FAAAA comport with the federal statute.

Admittedly, federal courts have been historically divided on the issue currently before this Court: whether negligent hiring claims against brokers are preempted by the FAAAA when the alleged negligence results in personal injury. Custom Pro has not tried to hide this fact. Instead, Custom Pro's Motion to Dismiss addressed and distinguished the major cases on this dispute. The simple truth is that two lines of cases have developed around the interpretation of 49 U.S.C. § 14501(b)(1) and (c)(1) and the guidance from the holding in *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008).

While some courts historically found that the FAAAA does not preempt personal injury claims against freight brokers, a growing number of courts (including, recently, this Court) have been finding the opposite. *See McKenna Alboreo, et al. v.*

*Dubai Express Haul, LLC, et al*, No. 1:23-cv-00964-JB-KK, Doc. 131 (D.N.M. Sept. 27, 2024). Courts finding federal preemption of personal injury claims advanced against a freight broker have more faithfully adhered to the complex Congressional statutory regime and the analysis as laid down by *Rowe*.

Here, the Court must make a decision as to which line of cases is correct. Custom Pro respectfully requests that the Court consider the more recent cases supporting FAAAA preemption which have been provided by Custom Pro in its Motion to Dismiss.

> **1.    *Miller* contradicts the FAAAA, the Supreme Court, and the majority of case law.**

The safety exception provides that the express preemption provision in § 14501(c)(1) "shall not restrict the safety regulatory authority of a State ***with respect to motor vehicles***." 49 U.S.C. § 14501(c)(2)(A) (emphasis added). The *Miller* court held (in a 2-1 decision) that negligence claims against brokers arising out of motor vehicle accidents satisfy the "with respect to motor vehicles" prong of the exception because "'with respect to' is synonymous with 'relating to.'" *Miller*, 976 F.3d at 1026, 1030. But this reasoning is fundamentally flawed, and has been rejected by the subsequent courts of appeals and district courts addressing the issue. Citing the Supreme Court's decision in *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013), the Seventh Circuit explained in *Ye* that contrary to *Miller*'s conclusion, "'with respect to' more narrowly means 'concerns.' . . . Given Congress's choice in § 14501(c)(1) to use 'relating to,' its use of 'with respect to' in § 14501(c)(2)(A) implies a different scope. No doubt 'with respect to' is broad, but we decline to equate it to

'relating to.'" *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 465 (7th Cir. 2023).[1]

In addition, the *Miller* court relied on a presumption ***against*** preemption, which the Supreme Court – and the Ninth Circuit itself in a later case – has stated does not apply when a statute contains an express preemption clause. *See Ye*, 74 F.4th at 465 (citing *Puerto Rico v. Frankin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) ("[B]ecause the statute 'contains an express pre-emption clause,' we do not invoke any presumption against pre-emption but instead 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's pre-emptive intent.'") (quoting *Chamber of Commerce of United States of America v. Whiting*, 563 U.S. 582, 594 (2011)); *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 533 n. 6 (9th Cir. 2022) (explaining that *Miller* directly conflicts with the Supreme Court's instruction in *Franklin*)); *see also Cox*, 2024 WL 2962783, at *7 (criticizing *Miller*'s reliance on a presumption against preemption as contrary to United States Supreme Court precedent).

When the plain language of the statute is considered, it is clear that the safety regulatory exception does not apply to brokers or broker services. Most telling, neither the exception itself nor the definition of "motor vehicles" includes brokers or

---

[1] Other courts have further elaborated on this point. *See Cox v. Total Quality Logistics, Inc.*, No. 22-26, 2024 WL 2962783 at *8 (S.D. Ohio June 12, 2024) ("The Court therefore finds that the Supreme Court's decision in *Dan's City Used Cars* instructs that 'with respect to' more narrowly means 'concerns' rather than the more inclusive 'relate.' . . . As a result, the phrase 'with respect to motor vehicles' in the safety exception supports a narrower interpretation than the Ninth Circuit formulated in *Miller*. And that interpretation does not include brokers."); *Lee v. Werner Enterprises, LLC*, No. 22-91, 2022 WL 16695207 at *5 (N.D. Ohio Nov. 3, 2022) ("The Ninth Circuit held the phrase 'with respect to' in the safety exception is synonymous with "relating to.' . . . This Court is not convinced. . . [i]f the safety exception preserved all claims related to motor vehicles, as urged by Plaintiff and *Miller*, 'all preempted claims would then be "saved" by the exception.' *Creagan*, 354 F. Supp. 3d at 814. This would make the entirety of the preemption provision redundant.").

broker services. *See Ye*, 74 F.4th at 460 (the phrase "'with respect to motor vehicles' . . . 'massively limits the scope' of the safety exception . . . to those laws concerning a 'vehicle, machine, tractor, trailer, or semitrailer . . . used on a highway in transportation.'" (quoting *Dan's City Used Cars*, 569 U.S. at 261; 49 U.S.C. § 13102(16) (defining "motor vehicle")); *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1272 (11th Cir. 2023) (explaining that "a 'broker,' by definition, may not provide motor vehicle transportation for compensation; only a 'motor carrier' may perform that task.") (citing 49 U.S.C. § 13102(2) (a "broker" is a "person . . . that . . . sell[s], provid[es], or arrang[es] for, transportation by motor carrier for compensation"); 49 U.S.C. § 13102(14) (a "motor carrier" is "a person providing motor vehicle transportation for compensation."))[2]

Courts post-*Miller* considered the statutory framework as a whole and have made two significant findings. First, the regulation of motor vehicle safety by Congress in Title 49 addresses motor vehicle ownership, operation, and maintenance, as well as motor carriers, but ***not*** brokers and broker services. *Ye*, 74 F.4th at 462-63. Second, the only way to give meaningful operative effect to the phrase "with respect to motor vehicles" is to limit it to laws having a direct link to motor vehicle

---

[2] The exclusion of brokers from the safety exception is more significant when compared to their inclusion in the express preemption provision of § 14501(c)(1). *See Ye*, 74 F.4th at 461 ("Congress could have chosen to save state safety laws enforced 'with respect to motor carriers and brokers,' but it did not. We hesitate to read broker services into parts of the statute where Congress declined to expressly name them, especially when it contemplated them elsewhere within the same statutory scheme.") (citing *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019)) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the court.'") (quoting ANTONIN SCALIA & BRYAN GARNER, *Reading Law: The Interpretation of Legal Texts* 94 (2012)); *see also Cox*, 2024 WL 2962783, at *7 ("If Congress intended for brokers to be included in the safety exception it would have. Instead, Congress marked a line in the sand when it limited the safety exception's application to state safety regulations related to 'motor vehicles.' So does this Court.").

safety; otherwise, the exception would swallow the broad general rule of preemption related to brokers. *Aspen*, 65 F. 4th at 1271; *Gauthier*, 2022 WL 344557 at *10; *see also Loyd*, 416 F. Supp. 3d at 1299 (pre-*Miller* decision).

Plaintiff now asks this Court to deny Custom Pro's motion by finding that his claims "fall within the purview of the FAAAA safety exception." Because there is no direct link between negligence claims against brokers and motor vehicle safety,[3] the safety regulatory exception does not apply here, and Plaintiff's claims against Custom Pro should be dismissed with prejudice as preempted under the FAAAA.

## III.    CONCLUSION

Federal law preempts personal injury claims against freight brokers, such as those asserted by Plaintiff against Custom Pro in the present litigation. Custom Pro respectfully requests that the Court dismiss Plaintiff's operative causes of action against Custom Pro asserted in his First Amended Complaint because Plaintiff's state-law negligence claims against Custom Pro, a freight broker in the incident made the basis of this lawsuit, are preempted by 49 U.S.C. § 14501(c)(1) and do not fall within the alleged safety exception.

---

[3] *Gauthier*, 2024 WL 3338944, at *2 (holding that a plaintiff's claim "against a broker" was "necessarily one step removed from a 'motor vehicle,'" and thus not preserved from preemption by the safety exception).

Respectfully submitted,

**MAYER LLP**

By:    _/s/ Brian J. Fisher_
       Brian J. Fisher
       J. Ashley Cummings

4101 Indian School Rd NE, Suite 301N
Albuquerque, New Mexico 87110
Telephone:  505.483.1840
Facsimile:  505.483.1841
Email:        BFisher@mayerllp.com
                 ACummings@mayerllp.com

*Attorneys for Defendant Custom Pro
Logistics, LLC*

## CERTIFICATE OF SERVICE

This is to certify that on December 31, 2024, a true and correct copy of the foregoing was forwarded to the following counsel of record via CM/ECF and electronic mail pursuant to Federal Rule of Civil Procedure 5:

Jason DeSouza                                          jason@jfdlawfirm.com
Jorge L. Alvarez                                       jorge@jfdlawfirm.com
DeSouza Injury Lawyers
4047 Naco Perrin
San Antonio, Texas 78217


Raúl P. Sedillo                                        rsedillo@jshfirm.com
Sky Willard                                            swillard@jshfirm.com
Jones, Skelton & Hochuli P.L.C.
8220 San Pedro Drive NE, Suite 420
Albuquerque, New Mexico 87113


Judd C. West                                           jcwest@hollandhart.com
Julia Broggi                                           jbroggi@hollandhart.com
Holland & Hart LLP
110 N. Guadalupe, Suite 1
Santa Fe, New Mexico 87501


By:    _/s/ Brian J. Fisher_____
       Brian J. Fisher